## BATE REFRIGERATING Co. *v.* GILLETTE and others.[1]

(*Circuit Court, D. New Jersey.* August 2, 1886.)

1. EQUITY—MASTER.
   The master is a judicial officer, acting as the representative and substitute of the court which appointed him.
2. SAME—ORDERS OF—POWER OF COURT OVER.
   While there can exist no doubt of the power of the court, for sufficient cause, to vacate or modify any order made by a master, it is not the general practice to interfere with his acts and proceedings *in limine*, but to wait until the coming in of his report.
3. SAME—MODIFICATION AND VACATION OF ORDERS, GROUNDS FOR.
   The fact that the execution of the master's orders will involve considerable expense of time and money may justify the hearing of an application to modify or vacate them on the ground that they are made without authority.
4. SAME—SOURCE OF AUTHORITY.
   The master derives his powers from his appointment by the court, and from the equity rules which especially prescribe his duties, and the manner of their performance.
5. SAME—JURISDICTION—PRACTICE.
   The universal practice has been to permit the master to act outside of the territorial jurisdiction of the court, and *semble* that he may take testimony in foreign countries.
6. SAME—TAKING TESTIMONY IN FOREIGN COUNTRIES, MODE OF.
   The master should choose the best method of taking testimony, under all the circumstances of the case, and if the cheapest plan is as good as any other, that plan should be adopted.

In Equity. Motion to vacate master's order.
*Dickerson & Dickerson*, for complainant.
*John R. Bennett*, for defendants.

WALES, J. An interlocutory decree against the defendants for infringing the complainant's patent has been entered in this suit, and reference made to a master for an accounting of profits and damages. Much testimony has already been taken by the master, at different times and places, for both parties; and, the complainants having closed their *prima facie* case, the master, on application of the defendants, and after hearing complainant's objections thereto, made and entered the following order on his record, to-wit:

"The master will resume and continue the accounting in this cause on the part of the defendants at the North-Western Hotel, in the city of Liverpool, England, on the seventeenth day of August, 1886, at 12 o'clock M. of said day, and continue thereafter, pursuant to adjournments from day to day, with the examination of such witnesses as may be produced on the part of the defendants; and thereafter adjourn to the St. James Hotel, on the corner of Piccadilly and Berkley streets, in the city of London, England, and there proceed with the examination of such witnesses as may be produced before him on the part of the defendants.

"And it is further ordered that the evidence to be adduced in Liverpool and London may be taken orally, in the presence of counsel, or upon written

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

interrogatories, direct and cross, as counsel for the complainant may elect, within four days after a personal service of this order. And if counsel shall fail or neglect to make this election within the said time, (four days,) and to give the counsel for the defendants and the master written notice of the result of the said election within four days after personal service of this order, then the master orders and directs that the examination of the witnesses to be produced before him in Liverpool and London aforesaid shall be conducted by written interrogatories.

"It is further ordered that the defendants shall have until August 2, 1886, to file with the master, and serve upon the complainant's counsel, a copy of the interrogatories, together with the names of the witnesses to whom the same are to be propounded; and the complainant shall have until August 12, 1886, within which time to file with the master, and serve upon the defendants' counsel, such cross-interrogatories as they may desire to propound to the witnesses to be examined.

"It is further ordered that if the complainant's counsel elect to proceed by oral examinations of the witnesses the defendants' counsel shall file with the master, and serve the complainant's counsel with, a list of the names of the witnesses proposed to be examined on the part of the defendants, on or before the first day of August, 1886, and no witnesses shall be examined whose names are not included in the said list.

"And it is further ordered that the costs of the proceedings of the master, under and in pursuance of this order, shall in no event, or under any circumstances, be taxed against the complainant at a greater sum than would properly be taxed against them under the rules and practices of this court if the same evidence had been taken before and by the master from the same witnesses produced before him in the city of New York, and without any fees for mileage."

This order was made on the twenty-second of July, 1886, and on the twenty-sixth of the same month the complainant gave notice to the master of its election to have the testimony taken orally, but expressly reserving any rights of objection to the order, or to any testimony taken thereunder. The master having heard and considered the objections to the making of the order, and overruled them, the complainant now moved the court to vacate the order on the ground that it is irregular, improper, and without authority.

The master is a judicial officer, acting as the representative and substitute of the court which appointed him, and while there can exist no doubt of the power of the court, for sufficient cause, to vacate or modify any order made by him, it is not the general practice for the court to interfere with his acts and proceedings, *in limine*, but to wait until the coming in of his report before hearing exceptions by either party to the cause to any irregularity or excess of authority on his part. *Union Sugar Refinery Co.* v. *Mathiesson*, 3 Cliff. 146; *Wooster* v. *Gumbirnner*, 20 Fed. Rep. 167.

There may be some justification in departing from this practice in the present case, in view of the fact that the execution of the master's order will involve considerable expense of time and money, which would be uselessly sacrificed if he has exceeded his authority in making it, or has exercised his power in such an arbitrary and improper way as to deprive either party of its rights. Two questions, then,

are to be considered in disposing of the motion to vacate: *First*, is the order void for want of authority? or, if not, *secondly*, would the execution of the order subject the complainants or their counsel to such unreasonable costs and inconvenience as to justly require the adoption of a less expensive and more convenient mode of taking testimony, and one which would be equally satisfactory in all other respects?

The master derives his powers from his appointment by the court, and from the equity rules which specially prescribe his duties, and the manner of their performance. The seventy-fifth and seventy-seventh of these rules appear to give him ample authority to make the order, unless it can be shown that the exercise of his official power is restricted to the district of New Jersey, or to the territory of the United States. The rules are silent on these matters, but the universal practice under them has been to permit the master to act outside of the territorial jurisdiction of the court, and, if we are correctly informed, without any limit as to places within the boundaries of the United States. And, if this be so, what written or unwritten rule of practice is there which forbids the master to take testimony in London or in Vienna, as well as in Boston or in San Francisco. In a legal sense, the two cities last named are as foreign to the district of New Jersey as are the others. The fact that there may be and are other modes of taking testimony abroad than the one ordered by the master does not deprive him of the discretion to act as he has done, unless those modes have been made exclusive by statute or rules of court. The absence of any express or implied prohibition on this subject in the rules, and the fact that, practically, no restriction has hitherto been placed on the master in reference to the state or country in which he may take testimony, seem to warrant the conclusion that in the exercise of a sound judicial discretion he is at liberty to make such order when he thinks it proper. In arriving at this result we have not been unmindful of the arguments of complainant's counsel at the hearing of this motion, or of the opinion of Judge NIXON on a motion for the appointment of a master in this very suit, delivered two years ago, and much referred to by counsel on both sides. The objections urged by complainant's counsel are based principally on the sixty-seventh equity rule, which provides for the taking of testimony after a case is at issue, and before final hearing, but has no special relation to the power and duties of a master, while the opinion of Judge NIXON nowhere denies the power of the master to go abroad to take testimony. The defendants had applied to the court for an order on the master to suspend all other proceedings, and go to England for the purpose of taking the testimony, orally, of foreign witnesses. The court refused the application, deciding that such an order is not made either by the court or by the master, as of course, when either party demands it, but according to the discretion of the judge or master; and that, as the

desired evidence related to one single fact, it could be as well taken unaer a commission, on written interrogatories, direct and cross, and with greatly less expense and personal inconvenience to counsel. That opinion is perfectly clear in its recognition of the authority of the master to make such an order whenever he is satisfied that the proposed evidence is material, and that the execution of the order will work no hardship to the opposing party by imposing unnecessary costs and trouble.

It should not be inferred, however, that the master should be governed in every case by the estimated cost of two or more ways of taking testimony abroad, and adopt the cheapest. He should choose the best, under all the circumstances of the case, and if the cheapest plan is as good as any other that plan should be adopted. Referring to the sixty-seventh equity rule, in *North Carolina R. Co.* v. *Drew*, 3 Woods, 697, Mr. Justice BRADLEY said that the rule should be literally construed. It was intended to authorize the appointment of examiners outside as well as inside the territorial jurisdiction of the court. The taking of testimony before an examiner orally, in the presence of the parties, is much more satisfactory than taking it by commission, and the rule should be construed so as to allow this to be done whenever a party desires it.

And this brings us to the second point. The complainant's counsel object to going to Liverpool and London on such short notice, and urge several other objections, addressed to the discretion of the court, all of which have been so well considered by the master in the record before us that it is only necessary to refer to the very satisfactory reasons assigned by him in support of his order. The defendants' counsel represent that the proposed evidence is material, and is in rebuttal to that submitted by the complainant, and that the witnesses to be examined reside in England, and cannot be produced before the master here. The complainants have had their choice of the testimony being taken orally, or on written interrogatories, direct and cross. Had they elected the latter mode, the necessity of counsel going abroad might, perhaps, have been avoided; but having selected the former, the hardship, if any, of attending the examinations in London and Liverpool, is self-imposed. Moreover, the master has provided that the costs of the proceedings under the order shall, in no event, be taxed against the complainants at a greater sum than would be properly taxed against them under the rules and practice of the court if the same evidence had been taken by the master from the same witnesses produced before him in the city of New York, and without any fees for mileage.

On the whole, we can see no valid objection to this order. It appears to be just and reasonable, and should be sustained. The motion to vacate it is therefore refused.