DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

**DURING THE YEARS 1914 and 1915.**

Metropolitan Trust & Savings Bank, Conservator, v. Mary E. Perry.

Cora Bloomhuff, v. Mary E. Perry.

In re Petition of Cora Bloomhuff, Appellee, v. Agnes K. Rogers, Administratrix, Appellant.

### Gen. No. 19,341.

1. APPEAL AND ERROR, § 1271*—*what presumed in support of decree.* When a party brings to the Appellate Court a *praecipe* record merely, it will be presumed in support of the decree that the portions of the record omitted, if incorporated into the transcript filed, would sustain the findings of fact found in the decree.

2. EQUITY, § 401*—*how jurisdiction obtained over master.* Jurisdiction over the person of a master in chancery, who is a party defendant in a petition filed in an action, in the conduct of which such master collected illegal fees, for the recovery of the amount wrongfully collected as fees, is obtained by the personal service upon him of a notice stating that at a certain time the solicitor for the petitioner would ask that a rule be entered against him to answer the petition "this day filed," and by the entry of a rule in accordance with such notice.

3. APPEARANCE, § 15*—*when jurisdiction over person waived.* An objection to the jurisdiction of a court of equity over the person of a master of chancery,—who is a party defendant to a petition filed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(277)

in the same action in which he acted as master, to recover fees illegally collected, and who has been personally served by a notice stating that at a certain time the solicitor for the petitioner would ask that a rule be entered against him to answer the petition "this day filed," a rule being entered in accordance with such petition —is waived by the filing of an answer to the petition after the over-ruling of a demurrer thereto.

4. EQUITY, § 401*—*when equity may compel master to refund illegal charges.* A court of equity has the power to compel one of its masters in chancery to refund fees illegally collected, by a summary proceeding, conducted in and as a part of the same suit in which such illegal fees were collected.

5. EQUITY, § 394*—*what is status of master.* A master in chancery is an officer of the court.

6. EQUITY, § 397*—*when agreement with master for compensation illegal.* It is illegal for a master in chancery to demand, or request by agreement between attorneys, that his fees be prepaid, as they should be taxed as costs.

7. EQUITY, § 396*—*what are fees for taking testimony.* The fees of a master for taking and reporting testimony are a fixed amount provided by statute.

8. EQUITY, § 399*—*how fees of master for reporting on issues fixed.* The fees of a master in chancery for examining the issues referred to him and reporting the conclusions thereon are wholly within the discretion of the court.

9. EQUITY, § 401*—*when evidence shows that master required an agreement for fees.* In a suit in equity in which an order was made requiring a master in chancery to refund part of the fees collected, evidence *held* to sustain a finding that the master requested that an agreement be made as to his fees before he filed his report and that he refused to file his report until his fees were paid.

10. CONTRACTS, § 139*—*when contract void as against public policy.* Any contract by which a public officer is to accept or receive for his services more than his statutory fees is contrary to public policy and void.

11. EQUITY, § 401*—*when petition to require master to refund fees not barred by laches.* A party to an action who paid to a master in chancery, before the filing of his report, fees in excess of what he was entitled to, is not guilty of laches in filing a petition to recover such fees where such petition is filed within six months after the payment of such fees, and less than one month after the entry of the final decree.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Metropolitan Trust & Savings Bank v. Perry, 194 Ill. App. 277.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD
M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court
at the March term, 1913. Affirmed. Opinion filed June 17, 1915.

**Statement by the Court.** This is an appeal by
George Mills Rogers, late master in chancery of the
Circuit Court of Cook county, from an order or judg-
ment of that court requiring him to pay back to Cora
Bloomhuff, appellee, part of the amount collected by
him from her as master's fees in a suit in equity to
which she was a party.

It appears that said last mentioned suit had been
referred to said master to take proofs and report the
same with his conclusions of law and fact thereon, that
he had taken a considerable volume of testimony, had
made and filed his report, and that a final decree had
been entered therein on November 23, 1912, which
made no mention of the master's fees.  On December
6, 1912, Mrs. Bloomhuff filed her intervening petition
in the same suit, in which she averred that no order
had ever been entered fixing the amount of the mas-
ter's fees, but that notwithstanding that fact she had
paid to the master at his request the sum of $1,355.13
for his services as master; that the report of the mas-
ter was "signed and announced" on May 10, 1912;
that objections were filed thereafter, which were over-
ruled on May 20, 1912, and that the report was filed
in the clerk's office on June 24, 1912, at 5:26 p. m.; that
prior to May 10, 1912, the master informed her that
he would not make his report unless an understanding
was had as to the payment of fees; that soon after,
and before the overruling of the objections to the re-
port, she paid $442.13 at the master's request, on ac-
count of fees; that thereafter, and before the report
was filed in the clerk's office, the master presented a
bill for $913 for additional fees, and demanded pay-
ment thereof before he would file his report in court,
whereupon she agreed to pay him $300 in cash, and to
give her promissory notes for $613, signed by herself,

her husband and her two sons, which agreement was carried out and the amount thus demanded was afterwards paid in full to the master; and that the reasonable fees of the master did not exceed $550. The petition prays that a rule be entered on the master to file an itemized statement of his fees and charges: that his fees be fixed and taxed by the court, and that the master be required to refund to the petitioner any excess of moneys received by him over and above the sum to be taxed by the court.

Upon filing his petition and on notice to the master, a rule was entered on him to file an itemized statement of his fees and charges, and to answer the petition, within five days. In response to the rule, the master filed a statement of his fees, consisting of two items: First, fees "for taking and reporting testimony," $272.63; and second, fees for "examining questions in issue referred, and reporting conclusions thereon, including argument by the solicitors for the respective parties," $1082.50. At the same time, the master filed a demurrer to the petition, stating that he is not a party to the suit in which the intervening petition was filed, and has no interest therein, and that no case is stated in the petition such as entitled the petitioner to any relief in a court of equity. After argument this demurrer was overruled, and the record shows that on motion of the master he was given leave to file and filed an answer to the petition.

His answer asserts that "not waiving his rights under his demurrer heretofore filed," he admits that the allegations of the petition "with reference to the amount of his bill for services, the amounts paid thereon and the giving of said notes" are substantially true, but denies that he ever made any demand that such fees be paid, and denies that he ever informed the petitioner that he would not make his report unless an understanding was had with reference to the payment of his fees, and denies that he ever made the payment

of his fees a condition of the filing of such report. The answer then states that after a preliminary draft of his report had been prepared by him, he heard arguments at great length and gave a very large amount of time to the "further consideration of the questions involved;" that he then prepared another report; that "sometime prior" to this, the solicitors for both parties were advised that the total fees of the master would amount to about $1,400, that "the whole matter of the fees, as to the amount thereof, and the time and manner of their payment, was discussed," and that on the suggestion of one of the solicitors, "voluntarily made," it was agreed between them "that when the final report should be completed, the party in whose favor the report should be, would advance the said master's fees and take up said report;" and that the fees were paid in pursuance of such agreement. The answer further states that no objection was ever made to his bill for fees, that no request or suggestion was ever made by any of the parties that the amount of his fees be fixed by the court, that no motion or effort was made to have the amount so fixed, and that at the time the final decree was entered, the solicitor for the intervening petitioner stated to the court "that his client had paid the fees and that there was no desire on his part that the decree make any reference thereto;" that said fees were and are only a reasonable charge for the services performed, that all the parties were satisfied that they were reasonable and justifiable, and that they were paid voluntarily and without any duress.

In January, 1913, the court heard evidence concerning the matters set forth in the intervening petition and answer, and entered the order complained of, in which the court finds "that the fees of George Mills Rogers in this cause be fixed at $902.63, for all services rendered in this cause, being $272.63 for taking and reporting testimony, and $630 for all other serv-

ices,'' and that as the intervening petitioner had paid $1,355.13 to the master, she is entitled to recover from him the difference, amounting to $452.50. Pending the hearing of this appeal in this court, the death of George Mills Rogers was suggested, and Agnes K. Rogers, administratrix, was substituted as appellant.

George Mills Rogers, *pro se.*

David K. Tone, for appellee.

Mr. Presiding Justice Fitch delivered the opinion of the court.

It is urged that the evidence taken upon the hearing shows that the fees charged and collected by the master were reasonable and proper, in view of the character of the case, the kind of services rendered and the amount of time consumed. The transcript of the record, however, does not contain all the evidence. It shows upon its face that the court considered as part of the evidence, the pleadings and the master's report containing the evidence taken in the main case, and none of such pleadings, and none of the evidence heard in the main case, is in the transcript of the record before us. The certificate of the clerk is that the transcript is complete "according to *praecipe* for record filed herein." Where a party brings to this court a *praecipe* record merely, it will be presumed in support of the decree that the portions of the record omitted, if incorporated into the transcript filed here, would sustain the findings of fact found in the decree. *Patterson v. Johnson,* 214 Ill. 481; *Patterson v. Northern Trust Co.,* 230 Ill. 334. Upon this appeal, therefore, it must be assumed that the amount fixed by the chancellor is the full amount that the master was entitled to receive or collect for the services rendered by him. Hence this court cannot increase the amount thus fixed, if it were disposed to do so. For the same reas-

Metropolitan Trust & Savings Bank v. Perry, 194 Ill. App. 277.

on, the cross-errors assigned by appellee, seeking to have the amount reduced, cannot be considered.

Apart from the question of amount, the main contention of appellant is that the Circuit Court had no jurisdiction to enter any order or decree requiring him to pay back any part of the fees collected by him. It is urged that jurisdiction of the person of the master was wanting because he was neither a party to the suit in which such fees were taxed, nor served with process therein; that jurisdiction of the subject-matter was also wanting because appellee had a complete and adequate remedy by an action at law against the master, or upon his official bond, for the recovery of any amount wrongfully collected as fees. We think neither of these contentions is sound. The master was a party to the petition filed against him, and jurisdiction over his person was obtained by the personal service upon him of a notice stating that at a certain time, the solicitor for the petitioner would ask that a rule be entered against him to answer the petition "this day filed," and by the entry of such rule in accordance with the notice. Furthermore, any objection to the jurisdiction of the person was waived by the filing of his answer to the petition after his demurrer had been overruled. This was a voluntary general appearance by the master, dispensing with the necessity of any formal service of process. Jurisdiction of the subject-matter, in our opinion, was obtained by the filing of the petition containing averments which, in effect, charged that a master in chancery had made use of his official position to exact from one of the parties to a suit referred to him greater compensation than the law allows, under such circumstances as to make it imprudent to resist his demand.

A master in chancery is an officer of the court, and the manner in which his fees shall be determined and paid is fixed by statute. In *Glos v. Flanedy*, 207 Ill. 230, it was said: "In all matters   *   *   *   such as the

284    Appellate Courts of Illinois.

Metropolitan Trust & Savings Bank v. Perry, 194 Ill. App. 277.

taking and reporting of testimony, computing the amount due on which to render a decree and making report thereof, examining questions of law and fact in issue by the pleadings and reporting conclusions, and all other matters where his authority is derived from an order of the court, the master is then a part of the court and his fees and compensation are constantly subject to the supervision of the court, and we know of no authority, statutory or otherwise, which authorizes him to demand of the parties litigant, as the causes proceed before him under references from the court, the payment of the fees or any part thereof. The law is that such fees shall be taxed as costs."

The statute provides a fixed amount for taking and reporting testimony, and provides further that in counties of the third class, masters in chancery may receive "for examining questions in issue referred to them, and reporting conclusions thereon," such compensation as the court may deem just. In *Polakow v. Leafgreen,* 178 Ill. App. 566, this court said, as to these statutory provisions: "It is apparent, therefore, that the amount of fees for taking testimony is fixed by statute, and, as was said in *Schnadt v. Davis,* 185 Ill. 476 (484), 'no more can be legally demanded of the parties, or either of them, for or on account of such services. Nor has the court power to order the payment of a greater sum or allowance for such service.' It is equally apparent that the fee for examining the issues referred to a master, and reporting conclusions thereon, is wholly within the discretion of the court, who fixes the compensation at an amount which he deems to be just. The solicitors have no power to bind the court by stipulating as to the amount of such fees. The basis of the court's allowance is the justness of the fees, and not the stipulation of the solicitors."

Under these decisions, it was clearly improper, if not unlawful, for the master to make any demand upon the parties, or any request, that the matter of his fees

Metropolitan Trust & Savings Bank v. Perry, 194 Ill. App. 277.

be agreed upon and paid while the cause was pending before him, and before the amount of such fees had been fixed by the court and taxed as costs in the case. No agreement so made can have any binding force or effect, and the fact that a master requests that such an agreement be made in advance of any action by the court gives rise to the suspicion that he fears the court may not approve his own estimate of the value of his services. This suspicion is strengthened in this case by the testimony of the master, who said that he told the solicitors when he requested them to agree upon his fees, that ''owing to the decisions of the Supreme Court'' as to master's fees, ''and in view of the practice in this county,'' it was difficult to collect master's fees ''unless the lawyers were themselves inclined to be fair with the master, and would try to protect him in the collection of his fees.'' While the master denied that he refused to file his report until his fees were paid, we think it is a reasonable inference, at least, from the evidence, that the parties were given to understand that no report would be forthcoming until some agreement was made as to the amount of the fees and the manner in which they should be paid. This being true, it is obvious that the request of the master that such an agreement be made before he had announced his decision upon the questions at issue, placed both parties in a most embarrassing position, in which neither felt free to refuse his request. Under such circumstances, his request had the force of a command, proceeding from one who, for the time being, occupied the position of a judge. When the solicitor for the petitioner was upon the witness stand, he was interrogated by the master as to whether the parties were dissatisfied with the amount of his fees. The witness replied: ''I know there was a talk about it— Mr. Isaacs and I had a talk about it.'' The same witness also testified as follows, in answer to questions put by the master: ''Q. Did I at that time, or at any

time, state to you that I would not file the report until my fees had been paid? A. I cannot say that you said that—No. Q. Don't you recollect that I never did say that? A. No, you did not say it *in that way— no; of course, there was the question that we were discussing, that was the question of the payment of your fees,'how you were to be paid. I would not say there was any threat made* that you would not file a report.''

It is unquestionably the law that any contract by the terms of which a public officer is to accept or receive for his services either more or less than his statutory fees, is contrary to public policy and void. 9 Cyc. 496. The illegal contract in this case, however, was fully executed; and as appellee was not *in pari delicto (Richardson v. Crandall,* 48 N. Y. 348), she undoubtedly could have recovered, in an action at law, the amount of the illegal fees paid by her. But does this fact oust a court of equity of jurisdiction? Equity has jurisdiction to correct mistakes, where there has been a mistake of law by one party induced by undue influence on the part of the other (*Sands v. Sands,* 112 Ill. 225, 231). It also has jurisdiction in cases of constructive fraud, and such jurisdiction is concurrent with that of the law courts. The precise question here involved, viz.: Whether a court of equity has the power to compel one of its own masters in chancery to refund fees illegally collected, by a summary proceeding, conducted in and as a part of the same suit in which such illegal fees were collected, does not seem to have been decided in this State. In other jurisdictions, however, it has been frequently held that where an officer of the court has received, by virtue of his office, in the course of some legal proceeding, money or property which he has no equitable right to retain, the court in which such proceeding is pending has jurisdiction, on petition or motion in the same suit, to order the money or property returned to the party to whom it belongs. *Mundy v. Schantz,* 52 N. J. Eq. 744; *Jeffries v. Laurie,*

23 Fed. 786; *Watson v. Edmonds*, 4 Price (Eng.) 309; *Smith v. Smith*, 1 Bailey (S. C.) 70; *Smith v. Myers*, 47 Mo. 342; *McMann v. Superior Court*, 74 Cal. 106. In *Mundy v. Schantz, supra,* the identical question here involved was raised and determined. There, a motion was made in a foreclosure suit for an order upon the complainant's solicitors to pay over certain moneys received by them from the sale of the mortgaged premises, and which they claimed the right to retain as compensation for their services, although they had previously received the full amount allowed them by the court for their solicitors' fees. The solicitors contended that the court had no power to deal with the matter in a summary manner in the foreclosure proceeding, and that the complainants must be remitted to their action at law. To this contention, the court replied: "If their claim arose out of matters outside the proceedings in this cause, the point might be well taken. But the question involves *their conduct in the cause, as officers of this court,* and with regard to such matters I understand them to be subject to the summary order of the court. It is a common practice to order an attorney or solicitor to pay over money which he has received in his capacity as an officer of this court." (Citing many authorities.)

Appellant admits that the court had the undoubted power to require him to file an itemized statement of his fees and charges in the same suit in which such fees and charges were made. This being true must a court of equity stop at the mere filing of such an itemized statement, after the master has received and collected more than the statute allows him, merely because there may be a remedy at law against him on his official bond? In such a suit at law, there could be no possible defense as to any excess of money collected by him over and above the amount allowed for fees and taxed as costs in the equity proceeding. In such case, there would be no issue of fact for a jury to try. The rem-

edy in equity is more prompt and more efficient, and avoids circuity of action. Furthermore, the court of equity having obtained jurisdiction for one purpose, viz., the allowance of the fees, clearly had the power to give full and complete relief even to the extent of administering purely legal remedies. *Kelly v. Galbraith*, 186 Ill. 593. We conclude, therefore, on this branch of the case, that the Circuit Court had full jurisdiction to enter the order or judgment in question.

It is urged that Mrs. Bloomhuff was guilty of laches in not filing her petition sooner, that the moneys paid to the master were voluntarily paid, and that, in any event, she did not pay them, but they were paid by her husband. We think these contentions are without merit. The petition was filed within six months after the payment of the fees to Master Rogers, and less than a month after the entry of the final decree. The evidence shows that while the actual payment was made by Mr. Bloomhuff, the money belonged to Mrs. Bloomhuff, and the payments were made in her behalf. It is true that the fees were not paid under protest, but they were paid under such circumstances as to make them, in a real sense, compulsory and not voluntary payments.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*