## Richardson's Guardian v. Frazier et al.

(Decided Jan. 24, 1933.)

STEPHENS & STEELY for appellant.

LOUIS M. MORANCY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

In the year 1881, D. J. Williams conveyed to his daughter, Laura A. Baker, 217 acres of land for and during her natural life with remainder to her children, but provided in the conveyance that, if she should die without leaving children or descendants, then to the Cleveland Orphan Institute of Versailles, Ky. This tract is situated about one-half mile from Versailles on the Versailles-Frankfort road. In 1909 Laura A. Baker and her husband conveyed her life interest in the farm to their son, A. F. Baker.

In 1917 this action was instituted in the Woodford circuit court seeking sale of the land and reinvestment of the proceeds. All the children and heirs at law of Laura A. Baker were joined in the action either as plaintiffs or defendants. Thereafter judgment was entered directing a sale of the land, wherein it was directed that the proceeds, when collected, should be invested in 4¼ United States Liberty bonds and be held by the special commissioner appointed by the court, subject to the control, order, and direction of the court; that the income therefrom be paid to A. F. Baker as the owner of the life estate during the life of Laura A. Baker.

Because of some interest of the master commissioner of the court in the litigation, Theodore Harris was appointed special commissioner to execute and carry out the judgment in all its provisions. The land was sold by the special commissioner for the sum of $53,308, and, under orders of the court, he collected the sale bonds, and invested the principal in Liberty bonds.

Theodore Harris died some time prior to March 3, 1925, and on that date the Harris-Seller Banking Company was appointed special commissioner to execute and carry into effect the judgment of the court in all its provisions. Whereupon it accepted the appointment and executed bond as provided in the order.

In the meantime, an amended petition had been filed wherein it was made to appear that, since the institution of the suit and the confirmation of the sale of the land, Pauline Richardson, a daughter of Laura A. Baker, and her husband, Chas. B. Richardson, who were plaintiffs in the action, had both died intestate, leaving as their only heir at law Phyliss Maurine Richardson, an infant under 14 years of age, who was a party de-

fendant in the action, and who had been summoned therein.

On November 5, 1930, the Harris-Seller Banking Company, as special commissioner, entered a motion for permission to sell the Liberty bonds held by it in the amount at par value of $58,100, and for advice and direction of the court as to proper investment of the proceeds in securities approved by the court. In the motion it was pointed out that the Liberty bonds would mature in 1933, at which time it was reasonably certain they would be called for payment, and that, since they were selling at a premium of about 3 per cent., the special commissioner deemed it advisable to sell them in order to take advantage of the premium and reinvest the proceeds in other good and approved securities. An order was entered wherein it was recited that, the court having considered the motion of the special commissioner, and being of the opinion that the bonds should be sold for the purpose of reinvestment as requested in the motion, it was ordered that the special commissioner be empowered, ordered, and directed to forthwith sell the Liberty bonds, and, after paying costs and commissions incident to the sale thereof, to reinvest the proceeds in equal or nearly equal portions in ten securities designated in the order, including certain state, railroad, and public utility bonds. No question is made as to the validity or regularity of any of the proceedings in the action up to the time of the entry of the motion to sell the Liberty bonds for reinvestment of the proceeds in other securities.

The special commissioner reported to the court that, pursuant to order, it had sold the Liberty bonds and invested the proceeds in nine of the ten securities suggested in the order, in sums indicated in the report.

Thereafter L. P. Lay, as guardian for Phyliss Maurine Richardson, filed exceptions to the report of the special commissioner on the grounds: (1) That it was without authority of law to change the investment in the Liberty bonds of a certain definite value, to municipal and industrial bonds of uncertain value whereby parties in interest sustained loss; (2) because the special commissioner, upon its own motion, and without any act on part of the parties to the action, asked the authority to change the substance of the estate from government to municipal and industrial

bonds; (3) because, since the purchase of the municipal and industrial bonds by the special commissioner, part or all of them had materially declined in value, thereby causing the estate a substantial loss. The statutory guardian also filed his petition to be made a party defendant in the action, and in his petition in addition to many of the facts hereinbefore set out, alleged that the special commissioner was without authority to change the nature and character of the estate without the consent of his ward. He asked for distribution of the funds held by the special commissioner and in such distribution that he receive one-sixth of $58,100 in 4¼ Liberty bonds, and, if that could not be done, that he be paid in cash one-sixth of the value thereof as of September 9, 1931, when they were sold, with 4¼ per cent. interest from that date. It appears from this petition that Laura Baker died in September, 1931.

The court sustained a motion to strike from the petition of L. P. Lay, statutory guardian of Phyliss Maurine Richardson, all the allegations thereof, except so much as shows the appointment and qualifications of the guardian and the fact that Laura A. Baker, the life tenant, died on September 8, 1931, to which order the guardian excepted. The court also sustained a demurrer to the exceptions filed by the statutory guardian to the report of the special commissioner showing the sale of the Liberty bonds, the various issues and amounts of the bonds bought with the proceeds; and adjudged that the report of the special commissioner as to the sale of the Liberty bonds and the reinvestment of the proceeds be approved and confirmed.

Thereafter L. P. Lay, as guardian, by way of amended petition and counterclaim, alleged that the securities in the hands of the special commissioner had depreciated and would continue to depreciate in value, and none of them had a definite or fixed value, and therefore could not be divided among the parties in interest. He asked for an order directing that all the bonds be sold and converted into cash, and that same be held subject to the orders of the court.

In final judgment and order of distribution, the request of the guardian for sale of all bonds was refused. It was directed that the bonds be divided in kind between the parties as therein directed, in so far

as they could be, and that the residue of the bonds not distributed in kind be sold by the special commissioner, and the proceeds divided among the parties as their interest appeared.

Phyliss Maurine Richardson's guardian is appealing from so much of the judgment and orders of the court as refused to grant the relief sought by his exceptions to the report of the special commissioner and by his petition made a party.

It is argued by counsel for appellant that the commissioner was without authority to change the investment of the fund in its hand from Liberty bonds to industrial securities, and that it is liable for the loss resulting from such change, notwithstanding the order of the court, procured upon its own motion, but without the knowledge or consent of the parties to the action whose interests were affected thereby. As sustaining their contention, counsel cite and rely on the cases of Latta v. Louisville Trust Company, 198 Ky. 45, 247 S. W. 1103, and Barth v. Fidelity & Columbia Trust Co., 188 Ky. 788, 224 S. W. 351, although those cases relate to the administration of a trust by testamentary trustees.

Since the office of master commissioner created by our statute is in all respects similar to that of master in chancery for centuries known to English and American jurisprudence, the duties and responsibilities being the same, cases dealing with one have equal application to the other. There is practical agreement of authority that the master commissioner or the master in chancery, as the case may be, is merely an agent or assistant of the chancellor. Dunlap v. Kennedy, 73 Ky. (10 Bush) 539; Metropolitan Trust & Savings Bank v. Perry, 194 Ill. App. 277; Finn v. Wetmore, 212 Ill. App. 550; 10 R. C. L. 507; 21 C. J. 600.

"In this state master commissioners have always been regarded and treated as officers of the courts of chancery, and as mere assistants to the chancellor." Dunlap v. Kennedy, supra.

He acts as the representative and assistant of the court which appoints him. Bate Refrigerating Co. v. Gillette (C. C.) 28 F. 673. He is a part of the court, and his official acts are subject to its control and supervision. Finn v. Wetmore, supra.

However, we find that in the case of Van Doren v. Van Doren, 45 N. J. Eq. 580, 17 A. 805, where the master who had been directed to deposit a fund deposited it to his individual account upon which he drew from time to time, it was held that he was chargeable as trustee for earnings of the fund while in his custody. However, the question as to the particular relation the master commissioner bears to the chancellor or to parties in interest is not of great importance here, since the sole question presented relates to his liability when acting in strict conformity with orders of the court.

The master commissioner, in the exercise of the duties of his office, is limited to the power conferred upon him by orders of the court, and all the authorities indicate that, where he acts without the limits of such authority, he becomes personally liable, but no cases have been pointed out, and an exhaustive research fails to reveal any, where a master commissioner has been held liable when he acts under and in conformity with the court's orders.

Even though acting in the utmost good faith and in an attempt to carry out the orders of the court, the master commissioner is liable if he pays money to the wrong person. Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S. W. (2d) 60; Ex parte Murdaugh, 58 S. C. 276, 36 S. E. 568; Houseal v. Gibbes, Bailey, Eq. 482, 23 Am. Dec. 186; 21 C. J. 603.

But, on the other hand, he is protected where he administers and pays out funds in accordance with the orders of the court. Simmons v. Simmons, Harp Eq. (5 S. C. Eq.) 256; Davis v. Harman, 21 Grat. (62 Va.) 194; Polock v. Dubose, 7 Rich. Eq. (28 S. C. Eq.) 20; Saunders v. Gregory, 50 Tenn. (3 Heisk.) 567; Pickens v. Dwight, 4 S. C. (4 Rich.) 360; 21 C. J. 603.

Money in the hands of the master commissioner is in the custody of the court, and is subject to its orders. It is not alleged that the special commissioner used any fraud or deception in procuring the order for the change in the investment, and there is nothing in the record from which it may be inferred that it acted corruptly or that it in any way profited by the transaction. It only carried out the specific orders of the court, and, as clearly indicated by the authorities cited, its acts

were the acts of the court. We are constrained to hold that in such circumstances no liability attached to the special commissioner. We further conclude that the order of the court directing how the securities should be divided and the residue sold and the proceeds distributed was proper and to the best interests of all concerned.

Judgment affirmed.