State ex rel. Townshend, Adm'r, v. Meagher et al.

---

STATE OF MISSOURI *ex rel.* E. TOWNSHEND, Adm'r, Plaintiff in Error, *v.* J. G. MEAGHER *et al.*, Defendants in Error.

1. *Administrator — Property stolen from — Not responsible for in equity.* — Where funds belonging to an estate are stolen from the executor or administrator while in his charge, he can not in equity be held liable; and in such case an equitable defense may be made to an action at law. The suit will be tried by a jury instead of the chancellor. But his right to the equitable defense remains. And he will be permitted to testify in his own behalf, under the statute (Gen. Stat. 1865, ch. 144, § 1), and independently of it, under the common law.

2. *Administrators are liable, for what care.* — Executors and administrators stand in the position of trustees of those interested in the estates upon which they administer, and are liable only for want of due care and skill; and the measure of care and skill required of them is the same as that demanded of bailees for hire, viz: that which prudent men exercise in the direction of their affairs.

3. *Bailee, care to be exercised by.* — The care to be exercised by a bailee over property in his charge must be graduated according to the character of the property, its value, and the convenience of its being made secure, the facility for its being stolen, and the temptations thereto.

4. *Administrator — Competency of as a witness — Construction of section 1, chapter 144, Gen. Stat. 1865.* — Under section 1, chapter 144, Gen. Stat. 1865, where the testimony of one of the parties to the transaction, or cause of action,

State ex rel. Townshend, Adm'r, v. Meagher et al.

or matter of defense, was placed beyond reach by death or insanity, the testimony of the other party was shut out, so as to preserve, as far as possible, an equality of position between them, and for no other reason. And in respect to a case where property in the charge of an administrator, belonging to the estate, is stolen, no testimony being lost by reason of the death of the intestate, the administrator is not within the reason of the exceptions named in the section, and is not excluded from testifying because of it.

### *Error to Fifth District Court.*

*Vories & Vories*, for plaintiff in error.

I. This suit is founded upon a contract, viz: the bond of the administrator. By the terms of that contract he is bound to pay over the money at all events, and public policy would forbid his discharging his obligation by showing that the money had been lost. This is the case with all officers who voluntarily assume a trust under a bond like the present. (Haller v. The State, 22 Ind. 125 ; Thompson v. Board of Trustees, 30 Ill. 99 ; U. S. v. Prescott *et al.*, 3 How. 578 ; 12 Cush. 144 ; Commonwealth v. Cowley, 3 Penn. St. 372 ; and cases cited in the foregoing cases.)

II. The personal property of the deceased, and all moneys coming into the hands of the administrator which belonged to the deceased, vest in the administrator, and become his property in law; hence he can not hold such money as a bailee. (Henry, Adm'r of Doty, v. Dutcher, 15 Mo. 89 ; Abbott v. Miller, 10 Mo. 141 ; Thomas v. Relfe, 9 Mo. 373 ; Lacompte v. Seargent, 7 Mo. 351 ; Hall v. Harrison, 21 Mo. 227.)

III. The exception in the statute (Gen. Stat. 1865, ch. 144, § 1) includes such a case as this.

*Harlan*, and *Kelly & Giddings*, for defendant in error.

I. Exceptions to general rules are to be strictly construed; and, in this case, unless the evidence offered comes clearly within the exceptions named in section 1, chapter 144, Gen. Stat. 1865, it ought to have been admitted. (40 Barb. 537 ; 45 Barb. 397 ; 20 Ind. 513, 264 ; 24 Ind. 68 ; 23 U. S. Dig. 597–98 ; 24 Ind. 656.) Meagher was clearly a competent witness within the intention and spirit of the law.

II. The property, money, and effects of the decedent do not belong to the executor or administrator in his own right; he holds them in trust for the heirs and creditors. (32 Mo. 431; 23 U. S. Dig. 256, § 24; 2 Am. Ch. Dig. 575 *et seq.;* 36 Penn. St. 174; 21 U. S. Dig. 257; 33 Barb., N. Y., 327; 21 U. S. Dig. 257, § 40.) He is simply a trustee, and is not to be held responsible as an insurer. Good faith and ordinary diligence and care are all that are required of him; and if the moneys or effects of the estate be lost or stolen, where he has exercised ordinary care, he is not liable. (3 Abb. N. Y. Dig. 88, § 293; *id.* 89, § 305; 7 *id.* 303, § 33; 3 Lead. Cas. in Eq., 3d ed., Hare & Wallace's notes, pp. 441, 445, 468; 4 J. C. R. 619; 45 Barb. 192; 4 Johns. 446; 31 How. Pr. 55; 1 Caines, 96.) The law of bailment, so far as the matter of diligence and negligence are concerned, is applicable to executors and administrators (3 Lead. Cas. in Eq. 445); and the administrator was only bound to use ordinary diligence. (Sto. on Bail. §§ 398, 399, 400; Edw. on Bail. 276–7; 2 Kent, 565, 578, 581; 2 Pars. on Cont. 130, 156; Sto. on Bail. § 399.)

CURRIER, Judge, delivered the opinion of the court.

In February, 1866, the Andrew County Court granted letters of administration on the estate of Robt. M. Cowan, deceased, to the defendant Meagher, who executed his bond as administrator, with the other defendants as sureties, for the performance of his duties in that relation. He thereupon assumed charge of the estate, and disposed of so much of it as to realize the sum of $1,807.50. On the 15th day of October following, his letters of administration were revoked, and the plaintiff, Townshend, as public administrator, was put in charge of the estate. This suit is brought upon the administration bond to recover the balance of moneys alleged to remain in the hands of the outgoing adminis-trator.

The answer admits the receipt of the $1,807.50 as charged in the petition, but alleges, in the way of defense, that $1,700 of said money was forcibly stolen and taken from the possession of

said Meagher, about the 9th day of September, 1866, by thieves, without his fault or neglect, and which said theft he could not prevent.

The replication puts the allegations in regard to the $1,700 in issue, and upon these issues the trial was had.

On the trial, Meagher was offered as a witness in his own behalf, and was excluded by the court, exception thereto being taken. An exception was also taken to one of the instructions given for the plaintiff, in whose favor the trial resulted.

Going back of the questions at the trial, however, the counsel of the plaintiff has insisted, in this court, that the facts alleged in the answer constitute no defense to the suit; that an administrator can alone be discharged from the obligation of his bond by producing the property or paying over the money that has come to his hands. In support of this view we are referred to a number of authorities, such as The United States v. Prescott et al. (3 How. 578), where the suit was upon the bond of a public officer holding public funds, and where it was held that the obligation of the bond was absolute, and that nothing short of the actual paying over of moneys which came to the possession of the officer would satisfy that obligation.

The obligation of the bond in suit is clearly different from that, for it is well established equity law that, under certain circumstances, executors and administrators are absolved from responsibility, notwithstanding the bond, and notwithstanding the failure to produce the property or pay over its value in money — as where the property has been taken by the public enemy, or has been lost through unavoidable accident, or, in case of animals, where they have perished from disease — no negligence being imputable to the administrator or executor. ( 2 Williams on Executors, 142, and cases there cited.) The obligation of the bond, therefore, in such cases is not absolute.

The condition of the bond under consideration is that the administrator shall pay over and account for the money and property that should come to his hands, belonging to the estate, as " required by law;" and the question remains, in a case like the present, what does the law require? In Cross v. Smith

(7 East. 251), Lord Ellenborough, C. J., holds the following language : " As no case at law has yet decided that an executor, once become fully responsible by actual receipt of a part of the testator's property for due administration, can found his discharge in respect thereof, as against a creditor seeking satisfaction out of a testator's assets, either on the score of inevitable accident — as destruction by fire, loss by robbery, or the like — or reasonable confidence disappointed, or loss by any of the various means which afford excuse to ordinary agents and bailees in case of loss without any negligence on their part; I say, as no such case in respect to executors has yet occurred in a court of law, we are not, from the particular hardship of the present case, authorized to make such a precedent in favor of the defendant." This was in 1806 ; and I find no subsequent case, English or American, where such precedent has been established in a court of law.

The rule in equity is different, however, as is shown by a long and uniform course of decision, although but few of them involve the particular question of the loss of money by theft or robbery. In Forman v. Coe (1 Caines, 96), it is assumed that robbery of trust funds in the hands of an executor, in equity, exonerates him from accountability; and that he is, from the necessity of the case, a competent witness in his own behalf. This was a case of robbery, as distinguished from theft, committed by a company of soldiers, on Long Island, in the time of the war of the revolution.

Redfield, in his work on Wills, part 2, p. 881, states the law in regard to the robbery of trust funds thus : " If the trustee is robbed of the trust money without his fault, he is not responsible ; and he may, in ordinary cases, exonerate himself by his own oath, as he can not be expected to produce any other proof." Morley v. Morley, 2 Ch. Cas. 2 ; Knight v. Lord Plimpton, 3 Atk. 480 ; and Jones v. Lewis, 2 Ves. 240, are cited as authorities supporting the text.

In the Morley case the defendant was trustee for the plaintiff, an infant, and received for him £40 in gold, of which he was robbed by his own domestic servant, together with £200 of his

own money. The Lord Chancellor allowed the trustee this £40 on his own oath. (See 3 Chit. Eq. Dig. 2934.) This would seem to have been a case of theft, technically, although it is spoken of as a robbery. The case in Atkyns does not involve the question of theft or robbery, but a question of care and prudence in remitting funds to London by a court receiver, in bills of exchange.

The facts in the case reported in 2 Vesey were that the administratrix had placed certain goods in the hands of her solicitor, from whom they were stolen. In regard to the case, Lord Chancellor Hardwicke said: "It is certain that if a bailee of goods, against whom there is an action of account at law, loses the goods by robbery, that is a discharge in an action of account at law; and it is proved (and, I think, reasonably) that if a trustee is robbed, that robbery, properly proved, shall be a discharge, provided he keeps them so as he would his own. So it is as to an executor or administrator, who is not to be charged further than goods come to his hands, and for these not to be charged unless guilty of a *devastavit;* and if robbed, and he could not avoid it, he is not to be charged, at least not in this court."

In 2 Williams on Executors, 1419–20, it is said: "But it should seem, at least in a court of equity, that an executor or administrator stands in the condition of a bailee, with respect to whom the law is that he should not be charged without some default in him. Therefore, if any goods are stolen from the possession of the executor, or from the possession of a third person to whose custody they were delivered by the executor, the latter shall not, in equity, be charged with these as assets." Jones v. Lewis (2 Ves.) and other authorities are cited in support of that doctrine; see, also, p. 1538. So, in the Law of Trusts and Trustees, by Tiffany & Bullard, p. 583, the principle is stated thus: "Where an executor has been robbed of money belonging to the estate, without any fault of his own, he will not be held responsible." The result is that executors and administrators, according to the decided cases and the views of eminent law writers, stand in the position of trustees of the persons who are interested in the estates upon which they administer, and that

they are subject to liability only for want of due care and skill, and that the measure of care and skill required of them is the same as that demanded of bailees for hire, namely: that which prudent men exercise in the direction of their affairs. To exonerate this class of trustees from liability on the ground of the theft or robbery of trust funds in their hands might at first seem to hazard the just security that ought to be thrown around estates, and to facilitate fraudulent practices on the part of corrupt executors and administrators. The experience, however, of the last hundred years, in this country and England, does not indicate that the rule works injuriously in this direction, or that it serves to induce cases of simulated theft or robbery. It is quite remarkable that so few cases have arisen where questions of this character have come up for adjudication. Besides, the holding of trustees to responsibility for trust funds in a plain case of theft or robbery, against which the watchfulness of a prudent man could not guard, would have a tendency to deter men of prudence and care from assuming such relations and responsibilities—thus leaving these funds to fall into the hands of less careful and scrupulous persons, and to a consequently increased hazard. On the whole, we are disposed to accept the law, as laid down in the adjudicated cases referred to, as satisfactory.

Under our system of practice, an equitable defense, which this is, may be made to an action at law. The change of system, in this instance, leads to a change of the trier of the questions of fact involved, substituting a jury in place of the chancellor; and what is due diligence is frequently more a matter of fact than a question of law. Practically, therefore, the relief which, in a case like the present, has been confined to a court of chancery, to be adjudged and disposed of according to the rules and principles of equity practice, is transferred to a court of law, involving a jury trial. But this circumstance does not warrant a modification of the existing rules governing the accountability of executors and administrators in respect to trust funds alleged by them to have been lost by theft or robbery through no fault of theirs.

On looking into the evidence preserved in the record in this case, it appears that the money alleged to have been stolen was

placed by the defendant Meagher in his pocket-book, and thus deposited in a drawer of a bureau standing in a vacant room of the house where he resided, the room being but indifferently secured against the entrance of burglars.   It also appears that thieves were infesting that part of the country at that time. Under such circumstances, the leaving of a considerable sum of money in the situation stated, is suggestive rather of   culpable negligence than a high degree of care and prudence.   It might be prudent enough to leave ordinary apparel in that situation. The fact, however, that the property in question was not clothing, but money, changes the character of the case.   That which would be ordinary care in the security and preservation of wearing apparel might be gross carelessness in the disposition of bank bills.   The care must be graduated according to the character of the property, its value, and the convenience of its being made secure, the facility for its being stolen, and the temptations thereto.   (Sto. on Bail. §§ 15, 186, and cases cited.)   Under the civil law, the fact of theft was itself deemed presumptive evidence of carelessness or fraud on the part of the bailee of the lost property.

The foregoing exposition of the law governing the liability of executors and administrators, in reference to the trust funds in their custody, disposes of the objection urged against the sufficiency of the defense set up in the answer, and also, incidentally, of the objection taken to the competency of Meagher as a witness, which is the other principal point in the case; since, as we.have seen, parties situated as he is are permitted to testify in their own behalf from the supposed necessity of the case, independently of any statutory regulation on the subject.   But Meagher is a competent witness by virtue of the provisions of the statute.   (Gen. Stat. 1865, p. 586, § 1.)   It was the manifest purpose of the Legislature, in this enactment making parties witnesses, to preserve as far as practicable an equality of position between them.   Therefore the living were not permitted to testify in respect to acts and transactions had with persons since deceased, or who had become insane; and for the reason that the testimony of the opposing party to the transaction, or cause of action, or

matter of defense, could not be had. This, indeed, runs through the entire proviso, including both exceptions, and constitutes the entire scope and substance of it. In cases where the testimony of one of the parties to the transaction, or cause of action, or matter of defense, was placed beyond reach by the causes stated, the Legislature very wisely shut out the testimony of the other party; and for that and no other reason. That seems evident on the face of the statute. In respect to the defense set up in this suit, there is no loss of testimony through death or insanity or other causes contemplated in the enactment. Meagher is clearly not within the reason of the exception, and he is not excluded from testifying because of it. As his testimony was improperly ruled out, the case must go back for a fresh trial. The instruction excepted to is subject to verbal criticism, although it puts the law to the jury with substantial accuracy.

The judgment of the District Court reversing the judgment of the Circuit Court is therefore affirmed, and the case remanded for trial in accordance with this opinion. The other judges concur.