## PARKS v. McDANIEL, EXECUTOR.

1. EXECUTORS—ACCOUNTING BY—JUDGMENTS—SUBROGATION.—Where the payment by an executor of a judgment obtained against him is assailed, the question is not merely whether he was negligent in defending the suit resulting in the judgment, but whether he acted in such bad faith or such disregard of his duty as would warrant a court in setting aside the judgment or in depriving him of any equitable right to be subrogated to the position of the judgment creditor, or in refusing him credit for its payment. In such case the burden of proof is on the party assailing the judgment to show the invalidity of the claim and that it was obtained by breach of duty by executor.

2. IBID.—IBID.—PHYSICIAN.—Code 1902, sec. 1113, providing that a non-registered physician cannot recover compensation for his services does not apply in an action against an executor to require him to account for amount paid in satisfaction of judgment obtained against him by a non-resident physician for services rendered his testator in this State.

3. IBID.—IBID.—IBID.—The evidence in this case shows that the physician's account for extra attention was large and unusual, but that the charge therefor was in accordance with the fee bill prevailing in the community. It is not certain that had the executor contested the account it would have been disallowed by the Court, and that the judgment was the result of the executor's negligence.

4. IBID.—IBID.—PAYMENT of a judgment obtained against an executor by default allowed as a credit in his settlement, where a motion was made by him for leave to answer after time, and motion at ensuing term to open judgment because of his excusable negligence in not answering, both having been refused.

Before GAGE, J., Edgefield, November, 1906. Reversed.

Action by Josie Parks against Winchester McDaniel, executor of Sallie E. McDaniel. From judgment for plaintiff, defendant appeals.

*Messrs. P. B. Mayson* and *J. W. DeVore,* for appellant, cite: 17 S. C., 43.

*Messrs. Sheppard Bros.,* contra, cite: 2 Williams on Exor., 1282.

July 24, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. Mrs. Sallie E. McDaniel, late of Edgefield County, S. C., died in November, 1901, leaving a will under which defendant, Winchester McDaniel, qualified as executor, which, after providing for the payment of funeral and other expenses incident to the settlement of her estate and bequeathing some specific articles of personal property, bequeathed and devised the remainder of her estate, real and personal, to Mrs. Josie Parks, the plaintiff, and Mrs. Lillie Thurmond. Mrs. Parks, having purchased the interest of Mrs. Thurmond in said estate, brought this action against the executor for an accounting and alleges that in such accounting the said executor should be refused credit for the amount paid by him, $560.76, in settlement of a judgment for said sum recovered against him as executor in favor of J. J. Burch on the ground that he "negligently and with total indifference to the interest of the estate and in utter disregard of his duty as executor," permitted judgment by default to be recovered for a sum largely in excess of what the estate was indebted to the said J. J. Burch. The action resulted in the following decree:

"The only issue in this case is the right of defendant to credit for some $560.76, alleged to have been paid by him to one J. J. Burch in satisfaction of a judgment recovered by Burch against the defendant as executor of the will of Sallie E. McDaniel. It is not denied that the defendant's

allowance of the judgment against him was an act of negligence. He did not contest its justice when he ought to have done so. And now he must show its justice in this action.

"The account is separated into two parts, that for January, February, March, April and June, 1901, rendered in South Carolina, and aggregating $256, after a credit of $100; and that for April and May, 1901, rendered in Georgia, aggregating $274.25.

"The first account is not allowable, under the South Carolina statute.

"The second account is discredited on its face. For thirty-three days' service this doctor charged $274.25. Only a very small part of that was for medicine. The far greater part of it was for 'extra attention.' The items thus characterized must be eliminated; there is no sufficient testimony to sustain them. It is enough to allow the charges described as 'visits and mileage,' and those for medicine.

"Let the master make the calculation and report the account due. It is so ordered."

The general rule undoubtedly is that where one accepts the trust of an executor he must manage the estate committed to him with the same care and diligence that a prudent and cautious person would bestow on his own concerns, and consequently is liable for losses to the estate due to his negligence. *Taveau* v. *Ball,* 1 McCord Eq., 464; *Glover* v. *Glover,* McM. Eq., 153; *Sollee* v. *Croft,* 7 Rich. Eq., 46; 3 Williams Executors, 6 Am. ed., 1805; 11 Ency. Law, 911. While ordinarily a fiduciary voluntarily paying a claim against the estate in his charge is fully protected by being subrogated to the rights of claimant, still a court of equity may protect him in the payment of an invalid claim if satisfied that he has acted under the circumstances as a prudent person would do in managing his own affairs. This applies to voluntary payments, but when a payment is made pursuant to the judgment of a court of competent jurisdiction against the fiduciary, it is

not the voluntary act of the fiduciary, but a compliance with a mandate of the court under compulsion. When such a payment is assailed the question is not merely whether the fiduciary was negligent in the conduct of the suit leading to the judgment, but whether he acted in such bad faith towards his trust or in such utter disregard of his duty as would warrant a court in setting aside the judgment or in depriving him of any equitable right to be subrogated to the position of the judgment creditor, or in treating the judgment as of no avail as a protection for its payment. In such case the burden of proof is upon the party assailing the payment of the judgment, at least to show the invalidity of the claim, and that the judgment was the result of the fiduciary's breach of duty.

In the case of *Tompkins* v. *Tompkins*, 18 S. C., 1, it was sought to prevent the executors from being allowed credit for payment on a judgment against them in favor of Jennings, Smith & Co., on the ground that said judgmen: was not authorized by law and was irregular, null and void. The Circuit Court disposed of the contention by saying at page 15: "It was no part of the inquiry referred to the referee to try the validity of the judgment. It was found that the executors paid it in good faith, they regarded it as a valid claim and it was certainly binding on the estate until it was set aside." Responding to an exception taken to this ruling, the Supreme Court, at page 28, said: "We see no error in the conclusion reached by the Circuit Judge in reference to this matter. Even though there may have been technical informalities in this judgment, yet there is no evidence that the debt on which the judgment was recovered was not a valid claim against the estate which has been extinguished by the executors, and they, therefore, should have credit for the amount paid by them." In 11 Ency. Law, 911, the case of *Cameron* v. *Morris*, 83 Tex., 14, is cited to sustain the proposition that a payment under an order of court, in the absence of fraud, is not a breach of duty and the executor or administrator is not liable for the

amount paid though the claim was invalid.    In *Harrison* v. *Turnbull,* 95 Va., 701, 41 L. R. A., 703, it was held that a decree establishing the claims against a decedent's estate and ordering sale of real estate to pay them is a complete bar to an action against the executor for a devastavit, the complaint not impeaching the judgment of fraud.

If we grant that the judgment paid by the executor in this case is not final and conclusive as against all in privity with the executor, in determining the validity of the claim as indebtedness due to J. J. Burch by the estate, but that it is only *prima facie* evidence of the justice of the claim and its payment, it is manifest that it was a fundamental error in the Circuit Court to hold that it was incumbent on the executor to show the validity and justice of the claim, whereas he should have held that it was incumbent on the plaintiff to show the contrary.    Let us, therefore, consider the evidence with the burden of proof properly placed and in view of the judgment against the executor.

The account disallowed *in toto* by the Circuit Court was for medical services rendered and medicines furnished to the testatrix by Dr. J. J. Burch in South Carolina from January 5 to April 12, 1901, aggregating, after a credit of $100, a balance of $256.    This account was disallowed under the statutes, section 1112, *et seq.,* relating to the qualifications of physicians, etc., to practice in this State.    Section 1113 provides: "In no case wherein the provisions of this article shall have been violated shall any person so violating receive a compensation for services rendered."    Subject to objection by defendant, it was shown that J. J. Burch is not a registered physician in South Carolina.    But the question was not whether J. J. Burch should recover for such services because of the alleged violation of the statute, but whether the executor was guilty of such misconduct as should in equity prevent him from receiving credit for money paid on a valid judgment.    So far as J. J. Burch was concerned, he was not a party to this suit and his right to recover on the account could not be

again called in question. He has been paid. The executor
makes no claim as physician and the statute does not apply.
If he be regarded as in the shoes of J. J. Burch under the
statute, then he must stand as one holding a claim which has
been legally adjudged to be a valid claim against the estate.
Moreover the complaint does not allege that J. J. Burch was
not entitled to recover because not a registered physician in
this State and that the executor was negligent in not resist-
ing the claim on that ground. Plaintiff sought to have the
complaint amended in this regard, but Judge Memminger
refused to allow such amendment. The testimony shows
that the only objection which the plaintiff ever made to the
executor's payment of the claim was that the charges were
excessive. We think, therefore, that the Circuit Court erred
in disallowing the executor credit for payment of the judg-
ment because of the statute relating to physicians.

The judgment paid by the executor also included an ac-
count for medical services rendered and medicines furnished
to Mrs. McDaniel while she was in Georgia, from April 13
to May 16, 1901, aggregating $274.25. The Circuit Court
held that this account is discredited on its face as the
greater part of it is for "extra attention" at the rate
of one dollar per hour, and he holds that there is no
sufficient testimony to sustain these items, and accordingly
he refused the executor credit therefor. Here again the
Court gave no effect whatever to the judgment against the
executor establishing the correctness of these items. Not-
withstanding there was a judgment by default of answer, the
statute required the plaintiff to make in that suit proof of
his unliquidated account, and it appears that J. J. Burch
was examined as a witness as to the correctness of the ac-
count, and the judgment recites that plaintiff, Burch, proved
his complaint to the satisfaction of the Court. In view of
this the account could not be said to be discredited on its
face.

It being incumbent on plaintiff at least to show the inva-
lidity or incorrectness of the account, let us examine the tes-

timony submitted. It was not questioned that Dr. J. J. Burch rendered the special attention for which he charged, as no witness suggested that the account was wrong in that particular. The question was whether the charges for such special attention were excessive. Dr. D. A. J. Bell, for the plaintiff, testified in substance that he had himself attended Mrs. McDaniel in March and April, 1901, and from his knowledge of her condition he regarded the account as excessive as to the items of extra attention, "unless he is a professional nurse as well as a doctor, and has time to nurse as well as prescribe for his patients." He stated that Mrs. McDaniel's case was not a plain case of kidney disease, but it was not an extraordinary case demanding the constant attention of a physician. He further stated that he did not know what the extra attention was, that in an extraordinary case a doctor may act to some extent as a professional nurse, and would have the right to charge when detained beyond the ordinary time by the patient in extraordinary cases.

On the other hand, in behalf of defendant, Dr. Thomas Jennings testified that he lived within two hundred yards of Mrs. McDaniel; that he attended on her first, then Dr. G. A. Burch, then Dr. Bell, and then Dr. J. J. Burch; that from his knowledge of Mrs. McDaniel's case her condition was such at times as to require this extra attention, and that the charge was not excessive. Dr. F. W. P. Butler testified that the account appeared to be an unusual one, but may be correct and all right, and that it was probable that the services rendered as stated in the account were necessary. Dr. J. H. Carmichael testified that he did not consider the items for special attention an overcharge or unreasonable according to the fee bill. Dr. J. G. Tompkins, sworn for the plaintiff in reply, testified that the extra charges per hour are legal and in accordance with the fee bill of the Edgefield Medical Association, but the frequency of them is very unusual, and that in his practice when the case demands constant attention he advocates the employment of a trained nurse as less expensive to the patient.

It seems to us that a fair inference from the testimony submitted is that the services charged for were rendered at the request and for the benefit of Mrs. McDaniel, and that while the account may seem large and unusual in the matter of special attention, still the charges for services admittedly rendered were not excessive and were in accordance with the medical fee bill prevailing in that community. In view of this it cannot be affirmed with certainty that if the executor had contested the account these items would have been disallowed by the Court and that the judgment rendered thereon was the result of the executor's negligence and not the result of Dr. Burch's rights in the premises.

The only negligence imputed to the executor is the failure to answer the complaint on the account within the time required by law. It appears that the complaint was served on the executor July 11, 1903; that he employed counsel to defend the suit on August 5, 1903; that his counsel appeared in Court on August 6th and opposed the granting of judgment by default, but, as no answer had been served in the time required, the Court gave judgment by default on August 7th. Then the executor made a motion before Judge Jos. A. McCullough at the ensuing term of Court to open the judgment by default on the ground of his excusable neglect upon his affidavit stating that he resided twenty miles from Edgefield Court House, and that at the time of the service of the summons and complaint and for some time thereafter he was in a critical condition due to a stab received in April before and was unable to attend to business; that when he was able to notice the papers, although still unwell, he carried them to his attorney on August 5th. This motion was denied by Judge McCullough, who took the view under the affidavits presented that the failure to answer was not due to excusable neglect, because, conceding that the executor was not able to go to Edgefield in person, he had mind enough to appreciate the importance of the case and could easily have communicated with his attorney by

message or mail in time to answer within twenty days or secure the necessary time to answer.

There was no appeal from Judge McCullough's order, and it is in no wise under review now, and we are bound to assume that it was a proper exercise of discretion under section 195, regulating the practice of relieving a party from a judgment taken against him through excusable neglect, etc. But the question before us is not one under section 195, but one addressed to the conscience of a court of equity, whether the negligence of the executor was such as resulted in the judgment rendered and whether the circumstances are such as should deprive him of credit for a payment he was compelled to make. We are of the opinion that the credit claimed by the executor should have been allowed.

The decree of the Circuit Court is reversed, and it is further ordered and adjudged that the defendant executor in his accounting be allowed credit for the sum paid in settlement of the judgment in the case of J. J. Burch *v.* Winchester McDaniel, as executor.