## McCallister's Administrator v. Stanley, et al.

(Decided February 10, 1920.)

### Appeal from Henderson Circuit Court.

1. Executors and Administrators—Loss of Assets—When Executor or Administrator Personally Liable.—While it is the rule that an administrator or executor is not liable for a failure to recover assets belonging to the estate except in case of fraud, bad faith or gross negligence, yet in the application of this rule it is generally held that a case of gross negligence is made out where it is shown that the property belonged to the estate, that it or its value could have been collected, and that the administrator made no effort to collect it other than to request its return.

2. Executors and Administrators—Loss of Assets—Personal Liability —Evidence—Sufficiency.—In an action by a creditor against an administrator to recover the value of a diamond brooch, which it failed to reduce to possession, evidence examined and held to

make out a case of gross negligence entitling the creditor to a recovery.

WORSHAM & HUNT and CLAY &. CLAY for appellant.

YEAMAN & YEAMAN, F. J. PENTECOST and H. M. STANLEY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Farmers' Bank & Trust Company brought suit against itself, as administrator with the will annexed of Mrs. McCallister, H. M. Stanley and others, to recover on certain notes alleged to have been executed to it by Mrs. McCallister and Stanley. Stanley filed an answer, counterclaim and set-off, pleading that he was principal on one of the notes, and surety for his mother on the other notes. He further alleged that Mrs. Mc-Callister owned, at the time of her death, a diamond brooch worth $4,000.00, and that the administrator was chargeable with this sum because it had negligently failed to reduce the brooch to its possession, or to recover its value. The trust company filed a reply, controverting the allegations of the answer, counterclaim and set-off, and pleading in substance that, before the death of Mrs. Mc-Callister, her heirs, H. M. Stanley, Mrs. Matthews and McClain Stanley took possession of all her property and divided it among themselves; that in this division Mrs. Matthews got the diamond brooch and took it with her to her home in the state of Ohio; that when an effort was made by the administrator to get possession of the brooch, Mrs. Matthews claimed that it had been given to her by her mother in 1899, and since that time she had had possession thereof, claiming it as her own, and she refused to deliver it to the administrator or account for its value; that Mrs. Matthews had always been a nonresident of the state of Kentucky and the brooch had not been in the jurisdiction of the state of Kentucky since the appointment of the administrator; that it had no way of disproving the claim of Mrs. Matthews that the brooch was hers, and under such circumstances it was not its duty, as administrator, to expend $400.00 or $500.00 in an attempt to recover the brooch. To this pleading H. M. Stanley filed a reply controverting its

allegations, and further averring that, in November, 1916, he had notified the administrator that Mrs. Matthews had the brooch in her possession, and had requested the administrator to recover the possession of the same, or its value; that the administrator said it knew Mrs. Matthews had the brooch, and that when Stanley returned a ring which he had belonging to the estate, the brooch would be forthcoming. It was also averred that the brooch was owned by, and in the possession of, Mrs. McCallister at the time of her death, and never was in the possession of Mrs. Matthews except on a few occasions, which facts were well known to the administrator when it qualified; that Mrs. Matthews had an interest in bonds in Henderson county of sufficient value to pay the value of the brooch, but that the administrator, although it knew of this fact, refused to take any steps to secure out of these bonds the value of the brooch.

After hearing evidence on the question, the commissioner reported that the trust company was liable for the value of the brooch, which he fixed at $4,000.00. On exceptions, the court sustained the ruling of the commissioner and rendered judgment against the administrator for $4,000.00. The administrator appeals.

The first question presented is whether the motion to dismiss the appeal should be sustained. The judgment was rendered on February 23, 1917. On December 23, 1918, a copy of the judgment was filed with the clerk of this court, and an appeal granted. On March 24, 1919, the transcript was filed with the clerk, and the necessary summons issued. It is claimed that the appeal was not prosecuted in time because no summons was sued out within two years, and the transcript was not filed within that time. Neither the suing out of a summons, nor the filing of a transcript within two years, is a prerequisite to the granting of an appeal. Jones v Finnell, etc., 8 Bush 25; Rush v. Hanley, 30 Ky. L. R. 170, 97 S. W. 126. However, after an appeal has been granted, the transcript must be filed in the office of the clerk at least twenty days before the first day of the second term of this court next after the granting of the appeal. As the judgment was filed, and the appeal was prayed and granted, within two years, and the transcript was filed more than twenty days before the first day of

the second term of this court next after the appeal was granted, it follows that the motion to dismiss the appeal should not be sustained.

With respect to the diamond brooch, for the value of which the trust company was held liable, the evidence in behalf of the trust company is as follows: Following its qualification as administrator with the will annexed of Mrs. McCallister, it learned that H. M. Stanley, McClain Stanley and Mrs. Matthews, legatees under the will and the heirs at law of Mrs. McCallister, had previously divided their mother's estate between them, and that each was in possession of certain personal property. It made demand on these persons for the return of the property which they had obtained from the estate. On November 11, 1914, it addressed to Mrs. Matthews, who lived at Hillsboro, Ohio, a letter enumerating the articles of personal property, including the brooch, which, it had been informed, she had in her possession, and requested the return of the property. In reply to its demand, Mrs. Matthews stated that she would like to retain certain items of personal property, other than the brooch, which she had received from the estate, on account of their sentimental value, and would be willing to pay their appraised valuation. She further stated that the brooch had been given her in the year 1899, and that she had kept it in her possession until her mother had become so afflicted with rheumatism that she could not wear her rings, at which time she begged her mother to take the brooch and wear it and enjoy it so long as she lived, which she did. She also gave the names and addresses of two witnesses who could substantiate her statement. Mrs. McCallister's will provided that the brooch should go to Mrs. Matthews, one diamond ring should go to McClain Stanley and another diamond ring to H. M. Stanley. Mrs. Matthews stated in her letter that Mrs. McCallister's will was nothing more than a memorandum of her wishes, as her mother had given away many of the articles enumerated in the will, and others had been sold and her mother had used the money. McClain Stanley testified that the diamond ring, which was left to him by his mother's will, had been given to him by his mother a year and a half before her death, but that he had given it back to her to keep for him, and that she had it at the time of her death. When asked where the

ring was that H. M. Stanley got under the will, he said that Mrs. Matthews had it, and that she told him "Morgan" gave it to her to keep for him. The ring which had been given to H. M. Stanley by his mother was not in Mrs. McCallister's possession at the time she died, but was being kept for H. M. Stanley by Mrs. Matthews, and was given to him after Mrs. McCallister's death. McClain Stanley also said that he heard his mother say she was going to give the diamond brooch to his sister, Mrs. Matthews. After his mother's death, Mc- Clain Stanley says that H. M. Stanley, who lived with his mother and who attended to all her business for her, told him that his mother's indebtedness consisted of $1,400.00 to the bank and $400.00 in accounts. In Mrs. Matthews' letter of November 14, 1914, to the trust company, she said that she understood that her mother's indebtedness was $1,800.00, and that she had agreed with her brothers, H. M. Stanley and McClain Stanley, that she would pay one-third of the amount if they would pay their two-thirds. Though this agreement had been made, H. M. Stanley thereafter asserted a claim against the estate for $5,500.00. Mrs. Matthews being a non-resident, the trust company's officers had no way to re-cover the property except by an attachment, and the ownership of the brooch at the time of Mrs. McCallister's death was so questionable, that they did not feel that they could make proper affidavit to secure an attach-ment.

On the other hand, the facts relied on by appellee are as follows: The will itself bequeathed the diamond brooch to Mrs. Matthews. The report of the appraiser shows that the brooch was not on hand so that it could be appraised. The brooch was in the possession of Mrs. McCallister at the time of her death, and belonged to her. H. M. Stanley gave the administrator a list of the personal property owned by his mother, and included in the list was the brooch. F. J. Pentecost notified the trust company that Mrs. Matthews had the brooch, and that it was worth enough to pay all of the debts against Mrs. McCallister's estate; that the brooch was given to Mrs. Matthews in the will, but that Mrs. Matthews took title until the debts were paid. He further told the trust company that Mrs. McCallister had property in Hender-son county, and that if it brought suit to subject the

property, the Henderson circuit court would have jurisdiction, Pentecost was informed that it was a matter for the administrator to look after through its own attorneys, and not through him. Later on, Pentecost wrote to the trust company as follows:

"I notice in your appraisement Mrs. Matthews is claiming the diamond brooch as her own, upon the idea that it was given to her by her mother prior to her death. Evidently this is a mistake. My information is that this brooch, together with several other very valuable jewels, were carried by Mrs. McCallister in a chamois skin bag around her neck and that Miss Lewis, the trained nurse who attended her, took them from around her neck after the breath of life had left her body. I would suggest that you confer with Miss Lewis as to the truth of this statement and as to the basis of any action you may care to take; it seems to me, as administrator of this estate, it is your duty to get possession of all this property at the earliest possible moment for the protection of all parties in interest."

The trust company was also advised in this letter that Mrs. Matthews had property in Henderson county, out of which the claim could be made if the brooch itself was not surrendered. About the same time, H. M. Stanley advised the trust company that Mrs. Matthews had property in Henderson county, which was to be sold on that day. It further appears that the land was sold and the proceeds of the sale amounted to $6,858.67.

The trust company insists that the facts are not sufficient to show liability. The argument in its behalf is as follows: It had reason to doubt the statement of H. M. Stanley that the brooch belonged to his mother, in view of the fact that he had stated that his mother's indebtedness amounted to only $1,800.00, and he had subsequently asserted a claim of $5,500.00 against her estate, and to place reliance upon Mrs. Matthews' statement that the brooch had been given to her several years before her mother's death, in view of the fact that she was permitted to take the brooch without objection. Under these circumstances, the right of the estate to recover the brooch was so doubtful that the trust company did not believe that it could truthfully swear that the claim was just and ought to be paid, which would have been necessary in order to levy an attachment against Mrs.

Matthews' property. It seems to us that the case does not fall within the rule applicable to bad debts, or contingent or doubtful claims. Here, the administrator knew that the brooch had been bequeathed to Mrs. Matthews. It knew that it was in Mrs. McCallister's possession at the time of her death, and was informed not only by the will, but by others, that it belonged to Mrs. McCallister. It made no effort to ascertain the facts from any persons other than McClain Stanley and Mrs. Matthews. Though informed by Mrs. Matthews of the names and addresses of two witnesses, who could substantiate her statement that her mother had given to her the brooch, the administrator did not write to these witnesses. It did not even apply to the court for advice in the matter, but proceeded without a fair and full investigation to conclude that the brooch did not belong to the estate, and contended itself with merely making a request for its return, when it could have attached Mrs. Matthews' property and recovered the value of the brooch. While it is the rule that an administrator or executor is not liable for a failure to recover assets belonging to the estate except in case of fraud, bad faith or gross negligence—Thomas v. White, 3 Litt. 177, 14 Am. Dec. 56; Head v. Perry, 1 T. B. Mon. 253; White's Heirs v. White's Admrs., 3 Dana 374—yet in the application of this rule, it is generally held that a case of gross negligence is made out where it is shown that the property belonged to the estate, that it or its value could have been collected, and that the administrator made no effort to collect it other than to request its return. Scarborough v. Watkins, 9 B. Mon. 540, 50 Am. Dec. 528; Williams v. Williams, 79 N. C. 417, 24 Am. Rep. 330; Johnson's Estate, 9 Watts. 107. The facts of this case bring it within the above rule, and the chancellor did not err in holding the administrator personally liable.

Judgment affirmed.