## Melheiser et al. v. Central Trust Company of Owensboro.

(Decided March 6, 1931.)

BEN D. RINGO for appellants.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

J. D. Melheiser by his will, among other things, provided as follows:

"3. I direct that my real estate be sold and the proceeds divided in seven shares as follows: (Here follow the names of appellants.)

"4. I hereby appoint the Central Trust Company of Owensboro, Kentucky, executor of this my last will and testament."

The Central Trust Company accepted the trust and duly qualified on January 19, 1926, as executor. Practically the only estate left by the testator was about 20 acres of land near Owensboro. The executor advertised the land for public sale on April 5, 1926. The sale was made by an auctioneer for the executor, and at the sale J. L. Taylor, a well-to-do farmer in Daviess county, bought the land for $3,400. No written memorandum of the sale was made. Taylor died the last of April, 1926, and after his death his sole devisee refused to take the land, and could not be required to do so as there was no written memorial of the sale to Taylor. The company did not readvertise the land for sale. It rented out the land for the year 1927 for $150. The tenant declined to rent the land for 1928, and in June, 1928, appellants brought this action against the executor to recover the loss of Taylor's bid; that is, to hold the executor responsible for the $3,400, on the ground that it was lost by the negligence of the executor. The issues were made up. During the progress of the action the land was sold on April 17, 1929, by the commissioner under the order of the court, and brought $2,450. On final hearing the circuit court dismissed the plaintiffs' petition, seeking to hold the executor liable for the loss of Taylor's bid. They appeal.

Only two witnesses testified in the case.

Roy Melheiser, who was living on the land when it was sold, testified to these facts: He was present at the sale which was made by C. A. Payne, as auctioneer. J. L. Taylor bought the land. He lived adjoining; was solvent and reliable. A day or two after the sale, Taylor came over to the place where he was then living; he seemed to be as well as usual; was joking and laughing; seemed to be in good health; bought a horse from him; told him that he had bought the farm; tried to get him to raise a crop that year on it; then said he had a man in view who would raise a crop for him and that as soon as it was convenient for Melheiser to move he would like for him to do so. He delivered possession to Taylor and nailed up the windows before he left. The buildings at the time the land was sold by the commissioner on April 17, 1929, were practically a wreck. The roof was off the barn; the floor was out of the house where somebody

came in and tore it up. It was all in a bad state of decay. Nothing was done to put the place in repair after he left.

H. A. Alexander, who was the assistant trust officer of the trust company, testified to these facts: He was present at the sale. Its auctioneer was C. A. Payne. The land was knocked off to J. L. Taylor at $3,400. Taylor was present and did his own bidding. After the sale Taylor walked over with him to the trust company and sat down in the front room; he was rather nervous; it was dinner time. He said he wanted to pay for the land and have a deed drawn and make the notes according to the terms of the sale. He said he was sick. Judge Triplett was getting the information to prepare the deed, and Taylor said he was going home and he would come in in a day or two and sign the notes and take the deed. He was to pay one-third cash and execute two notes due in six and twelve months, respectively, for the remainder with interest from date. He did not come back. In a week or ten days somebody told Alexander that Taylor was sick, told him that he was very ill; that was the first he heard of it. Taylor had a florid face and was rather a fat man. The trust company did not send any one to his house or take any steps to see him. He died the last week in April. After his death the bank consulted with his sole devisee about taking the land; thought all the time she would take it; talked to her several times about it, but she declined to take it. The place was vacant during the year 1926; the tentant who rented the land in 1927 declined to keep it in 1928; he tried to rent it and talked to a great many people about it, but was unable to do so, and in June, 1928, this action was filed, and the trust company would not for this reason rent the land in 1929. The buildings were in bad repair in 1926 and had been for some time; they were so old that repairs were impractical. The following stipulation was filed:

"It is stipulated between the parties hereto that no written memorandum was made or signed by the auctioneer who cried the sale made to J. L. Taylor, referred to in the deposition of H. A. Alexander herein, as to the terms of the sale, the name of the purchaser, or the price at which said land was sold; nor was any such memorandum made or signed by J. L. Taylor, the bidder at said sale.

"It is further stipulated that said Alexander will state, if asked about said matter, that he did not insist on a written memorandum of said sale being made or signed by anyone, and did not at once close up said transaction because he did not anticipate the serious illness or death of the said Taylor."

The executor had under the will full power to do all that was necessary to carry it into effect and so was authorized to sell and convey the land. Miller v. Miller, 236 Ky. 45, 32 S. W. (2d) 539.

It is well settled that the auctioneer may be treated as the agent of both seller and purchaser and that a memorandum of the sale signed by him is sufficient under the statute of frauds (Ky. Stats., sec. 470). McBrayer v. Cohen, 92 Ky. 479, 18 S. W. 123, 13 Ky. Law Rep. 667; Garth v. Davis, 120 Ky. 106, 85 S. W. 692, 27 Ky. Law Rep. 505, 117 Am. St. Rep. 571; Martin v. Mathis, 184 Ky. 20, 211 S. W. 198.

It is also well settled that in all matters pertaining to the estate the executor is under the legal duty to exercise that degree of care and diligence which ordinarily careful and prudent persons exercise in their own personal affairs. The failure to do so is negligence for which he is liable. Barth v. Fidelity, etc., Trust Co., 188 Ky. 799, 224 S. W. 351; State v. Meagher, 44 Mo. 356, 100 Am. Dec. 298; Parks v. McDaniel, 75 S. C. 7, 54 S. E. 801, 117 Am. St. Rep. 878 and notes.

"A waste of assets, or devastavit, is any mismanagement of the estate and effects of a decedent, or any squandering or misapplication of the assets, contrary to the duty imposed on the executor or administrator, and consists of any act, omission, or mismanagement by reason of which the estate suffers loss." 24 C. J. p. 118, sec. 563.

In Webb v. Conn., Litt. Sel. Cas. (16 Ky.) 481, the administrator was held liable for the hire of a slave on facts thus stated by the court:

"It appears that the administrator on hiring the negro, received bond with security for the amount, and by arrangement afterwards made, between the

person hiring and the administrator, the negro belonging to the estate was returned, and one of his own negroes delivered to the person hiring, with an understanding that a larger sum should be paid than was at first agreed on. Accordingly, the obligation first given was changed to meet the subsequent agreement of the parties; but without the assent of the security. The bond so changed, was afterwards put in suit; but the principal proved insolvent and the security was discharged in consequence of the alteration.''

In Tuggle v. Gilbert, 1 Duv. 340, where the executors, knowing that the principal in the note was insolvent and surety solvent failed to sue and released the survey, the executor was held liable for the debt. In Foster v. Foster, 71 S. W. 524, 526, 24 Ky. Law Rep. 1396, the executor was held personally liable on a note which he had failed to collect on these facts:

"When the note was received by E. D. Foster, the executor, it was kown by him that A. J. Kennedy was the principal and W. J. Kennedy the surety and that the former was insolvent and the latter solvent. In his deposition he stated that he had a conversation with W. J. Kennedy that it would be barred as to him in a few months, and Kennedy begged him for further time. He granted it, and after it was barred he brought suit on it and lost. In the effort to collect that note he did not use any diligence, and therefore the court did right in charging him with it."

In May v. Walters' Ex'rs, 149 Ky. 754, 149 S. W. 1014, 1017, the rule was thus stated:

"Of course, it is the duty of executors and trustees to exercise reasonable diligence to collect all notes that come into their possession, and they are not entitled to credit by amounts that were not but that could have been collected by exercise of reasonable diligence on their part."

To same effect see McCallister's Adm'r v. Stanley, 186 Ky. 838, 218 S. W. 237; in re Saier's Estate, 158 Mich. 170, 122 N. W. 563; In re Dolenty's Estate, 53 Mont. 33, 161 P. 524.

The tract of land was practically the whole estate left by the decedent. The sale had been advertised by

posters and in the newspapers at the expense of the estate. The sale price was an asset of the estate, a valuable asset as shown, not only by the price the land·subsequently brought, but by the fact that the executor insisted on Mrs. Taylor's taking the land at this price and that it did not readvertise the land for sale. The loss of this asset was due to the fact that no memorandum of the sale was made and signed. If this had been done, there would have been no trouble. The auctioneer was the agent of trust company and it is liable for his· negligence. It is a well-settled custom under the law of the state for the auctioneer, when property is knocked off, to make such a memorandum and sign it. When this was not done and Taylor went to the office of the trust company, the company did not use that diligence and care that a man of ordinary prudence would use when it suffered Taylor to go home without any written memorandum of the sale and took no steps to this end, although it did not hear that Taylor was sick for something like a week after this. Persons of ordinary prudence in the transaction of their own affairs do not sell valuable land and thus leave the transaction not reduced to writing in this way; for they know that the contract is not binding upon the purchaser unless put in writing. It was the duty of the executor to see that this contract was reduced to writing on the day of sale, and its failure to do this was clearly a failure to exercise ordinary care, such as a person of ordinary prudence would exercise in his own affairs in such a matter. The resulting loss should not fall upon the devisees of the estate. If a sheriff had sold his land under an execution and had done just what the trust company did, thus releasing Taylor from his purchase, clearly the sheriff would be liable to the plaintiff in the execution for the ·direct loss he so sustained. If a real estate agency, selling lots at auction, should do just what the trust company did here and the owner thus lost the right to enforce the sale, the negligent agency should bear the loss rather than the innocent property owner. The same rule must apply on like facts between the executor and the devisees under a will directing the land to be sold by the executor.

Judgment reversed, and cause remanded for a judgment as above indicated.