## Citizens' National Bank v. Brewer et al.

(Decided March 9, 1934.)

E. L. MORGAN and FORESTER & CARTER for appellant.
C. B. SPICER for appellee.

Opinion of the Court by Hobson, Commissioner— Affirming in part and reversing in part.

Moses Brewer died a resident of Harlan county on February 18, 1931. The Citizens' National Bank qualified as his administrator on April 6, 1931. The bank went into the hands of a receiver on January 19, 1932, and on April 16, 1932, the receiver filed a settlement of the bank's account as administrator of the estate of Moses Brewer. His heirs filed exceptions to this settlement, insisting that the bank should be charged, in the settlement, with a note for $4,564.26, due July 5, 1930, executed by the Myers Sergent Lumber & Supply Company, also by a note for $6,078.10; due July 5, 1931. On a trial of the exceptions, a large mass of proof was taken. The county court overruled the exceptions, and an appeal was taken to the circuit court. In the circuit court the exception was overruled as to the note for $4,564.26, but the exception was sustained as to the note for $6,078.10, and the bank was charged with this note. The bank appeals, and the exceptors prosecute a cross-appeal.

The facts are these: Moses Brewer, some years before his death, sold property that he owned, and deposited the money in the Citizens' National Bank. He then lent out the money, taking notes to himself, and, as the payments were made on the notes, deposited the money to his account in the bank. The bank simply received the deposits as those of other depositors, making no charge. He left his notes with the bank, which kept them for him. He could not read or write, but he attended to his own business with the help of others. As to the $4,564.26 note, it appears that this note fell due in Moses Brewer's lifetime, and, according to the testimony for the bank, was paid off before his death. The question as to this note turns on the credibility of the witnesses. The county court and the circuit court both credited the witnesses for the bank on the question, and, without going into the facts, it is sufficient to say that this court, on a consideration of all the facts, cannot disturb the finding of the county court and the circuit court on this question. The cashier of the bank and the president of the bank controlled the matter, and, if their testimony is true, the bank was properly not charged with this note. On the cross-appeal the judgment of the circuit court is affirmed.

On the appeal of the bank from the judgment of the circuit court charging it with the note for $6,078.10, the court has more difficulty. The bank had nothing to do with the taking of this note, and had no control over it until it qualified as administrator in April, 1931. When the note fell due on July 5, 1931, the bank at once notified the makers of the note, H. B. Turner, W. C. Turner, and B. F. Kelly that the note was unpaid and must be paid at once. They then went to see Mrs. Brewer and her son, appealing for a renewal. The result was that the Brewers signed a written agreement dated July 14, 1931, which, after setting out the facts, concluded as follows:

"Whereas, the signers of the said note are unable to pay the same, it is now agreed to by the undersigned and the said Administrator is hereby authorized and directed to grant a renewal of the said note for a period of six months on the condition that the sum of at least $500.00 is paid, and a mortgage on real estate is executed and delivered to the said administrator to secure the payment of the said renewal."

The paper was dated on the day it was drawn, but it was not signed by all the parties until a few days later. After it was signed, the Brewers and the debtors met at the bank, and the question what property was to be mortgaged to secure the note was discussed. Mrs. Brewer was unwilling to accept the mortgage that the debtors proposed to give, and so the parties left without anything being done. The $500 was not paid, and there were some conferences after this which resulted in nothing being done. The bank was willing to take the proposed mortgage, but Mrs. Brewer objected, and her children either sided with her or took no action. The bank and placed the note in the hands of its attorney, with directions to sue upon it before the paper of July 14 was presented. The attorney had drawn the petition, but had not filed it and did not file it after this paper was signed. The next term of the Harlan circuit court began the third Monday in August, 1931. W. C. Turner was a member of the grandjury, and during that term was taken suddenly sick and died on August 26, 1931. When Turner was taken sick, and before he died, Mrs. Brewer wrote the bank a note, in view of his sickness, telling the bank to do the best it could, but the officer of the bank thought that Turner was too sick then to do any-

thing, and nothing was done. After Turner's death, the bank did not bring a suit on the note, because no suit could be brought against his estate until six months after the administrators qualified.

In Melheiser v. Central Trust Co., 237 Ky. 760, 36 S. W. (2d) 377, 379, the rule as to the responsibility of a personal representative is thus stated:

> "It is also well settled that in all matters pertaining to the estate the executor is under the legal duty to exercise that degree of care and diligence which ordinarily careful and prudent persons exercise in their own personal affairs. The failure to do so is negligence for which he is liable. Barth v. Fidelity, etc., Trust Co., 188 Ky. 799, 224 S. W. 351; State v. Meagher, 44 Mo. 356, 100 Am. Dec. 298; Parks v. McDaniel, 75 S. C. 7, 54 S. E. 801, 117 Am. St. Rep. 878 and notes."

To the same effect see May v. Walter's Ex'rs, 149 Ky. 754, 149 S. W. 1014; McCallister v. Stanley, 186 Ky. 838, 218 S. W. 237, and cases cited.

W. C. Turner, it is conceded, was insolvent at his death on August 26, 1931. H. B. Turner was also then insolvent. But it is insisted that Kelly had property subject to execution and that the bank was negligent and should be held responsible for the loss of the money for this reason. J. C. Baker, the attorney in whose hands the note had been placed for collection by the bank in July, 1931, before the paper above quoted was executed, testified in brief as follows: Mrs. Brewer objected to the mortgage which was offered. W. C. Turner was going to bring down some deeds to some other property before he could give her a mortgage on this property, but, before anything was done, he was taken sick and died. Mrs. Brewer wanted, not a suit, but payment secured by renewal and mortgage. He prepared a suit to file, but did not file it because of the death of W. C. Turner, as the action could not be brought against his estate for six months. Up to that time they were trying all the time to get a mortgage that would be satisfactory to the Brewers.

B. F. Kelly testified that he had land worth $10,000 that was unincumbered, and also had a store worth $3,-000, but, as shown by the proof, there was over $18,000

of execution and lis pendens liens against Kelly before the $6,078.10 fell due. In addition to this, there were large sums of claims in the hands of lawyers about this time. J. S. Forester had claims amounting to $18,000; E. L. Morgan, $6,000; J. C. Baker, $17,000; and there were other debts out amounting to over $20,000. The store was sold under a judgment obtained at the May term, 1931, and other judgments rendered at that term are still unpaid, and the claims in the hands of the attorneys were also unpaid.

The facts show clearly that B. F. Kelly was insolvent on July 5, 1931, when this note matured, and from all the facts the court is satisfied that, if the bank had secured a judgment on this note at the November term of the court, it could not have made the debt out of the defendant on an execution. The bank was not to blame for not suing at the August term, for the efforts to secure a renewal by giving a mortgage had not been given up until that term began, and the suit which the bank had prepared was not filed at that term for that reason. The only ground for holding the bank liable is for its failure to sue at the November term, but it is not liable for this, except to the extent that the plaintiffs' debt was lost by reason of its not suing then. Kelly was so badly involved, there were so many executions against him and lis pendens liens that it is very doubtful if anything could have been made out of him on a judgment rendered at the November term, when there were so many outstanding older liens and judgments, some of which have not been paid and are still outstanding. The liens of the outstanding executions were not only liens against the property on which they were levied, but were liens on all his property subject to execution, and additional levies might be made at any time before the executions expired. If the bank had acquired any lien by a mortgage or contract with Kelly after the August term, 1931, clearly under the proof shown it might have been adjudged a preference under the act of 1856. Under such circumstances as we have here, a man of ordinary prudence, with all the facts before him, might reasonably have concluded that it was safer and better to wait a while and not rush things when there were so many outstanding executions and the result was so uncertain. It was an unusual situation. The panic of 1929 had come on. The values of all lands had gone down.

This was especially true of coal property, such as Kelly had. The administrator is not to be held liable for the loss of a debt when confronted with such difficulties that men of ordinary prudence might differ as to the best course to pursue. The bank here, on the advice of its attorney, concluded to wait six months so that it could sue all the makers of the note in one suit. The facts as they are now shown were not then all known, and on all the facts, and in view of the admitted fact that so many other claims which were put in the hands of attorneys, are unpaid, the court concludes that the administrator should not be charged with the loss of this debt.

Judgment reversed, and the cause remanded for a judgment as above indicated.