## Barth, et al. v. Fidelity & Columbia Trust Company.

(Decided April 30, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Executors and Administrators—Sale of Dividend Paying Securities.—Section 4707 of the statutes, which provides how and when dividend paying stocks may be sold by an administrator or executor, held to be mandatory rather than directory and must be substantially complied with by the personal representative or he cannot confer title upon a purchaser.

2. Statutes—Construction.—Since section 4707 of the statutes is remedial and intended to cure a defect in the common law for the better protection of property rights, under the rule in this state, it must be construed liberally so as to effectuate the legislative purpose. (Ky. Statutes 460.)

3. Executors and Administrators—When Sale by Personal Representative Not Judicial Sale.—Such a sale by a personal representative after securing authority by proper ex parte proceeding as prescribed is not a judicial sale. Hence section 696 of the Civil Code requiring judicial sales to be public and upon such terms as the court may order is not applicable.

4. Executors and Administrators—Sale of Dividend Paying Securities—Fiduciaries.—Since only the fiduciary may be represented in the ex parte proceeding for authority to sell dividend paying stocks, and neither creditors nor beneficiaries may have an opportunity to be heard, the fiduciary cannot claim protection under the order or permission he procures as against those having an equitable interest in the property if he should not have applied for the power, or if he acts fraudulently or negligently thereafter.

5. Executors and Administrators—Sale of Dividend Paying Securities.—By this section of the statutes a personal representative cannot sell this class of property until it becomes necessary for one of three designated reasons, and the question of such necessity is left to the discretion of the circuit court, or, in vacation, the judge thereof.

6. Executors and Administrators—Sale of Dividend Paying Securities.—The question of necessity for the sale is not a jurisdictional fact that must affirmatively appear of record, but will be presumed unless the contrary affirmatively appears. Hence, where an order has been entered granting a personal representative power to sell it cannot be held that he was without power simply because the necessity for the sale was not perfectly pleaded, and did not affirmatively appear of record.

7. Judicial Sales—Appraiser May Become Purchaser.—Under the rule in Kentucky an appraiser may become a purchaser of property he has appraised unless it is shown that he made the appraisement with a view of becoming purchaser and undervalued the property with that in mind.

8. Executors and Administrators—Sale of Dividend Paying Securities—Appraisement.—Where the appraisement shows that certain stock was not appraised at all, but reported as "value unknown," it cannot be said that the stock was undervalued for the purpose of obtaining an advantage thereby.

9. Executors and Administrators—Sale of Securities—Purchase by Appraiser.—The fact that such an appraiser who later becomes a purchaser of the stock was a director and managing officer of the corporation imposed upon him the same duty, and no more, that he owed to every other stockholder in the corporation; i. e., to make no misstatement of any material fact about which he was asked or about which he volunteered information.

10. Executors and Administrators—Sale of Dividend Paying Securities.—Negligence.—Where stock in a corporation had paid phenomenal dividends since its organization, had no liabilites and owned assets worth approximately as much as was obtained upon a sale, held, that the executor in making such a sale to the first and only person approached, upon a basis of the bare value of the assets alone, was guilty of negligence and must answer in damages to the beneficiaries, even though the company was engaged in business of a hazardous nature and under existing circumstances the sale of the stock was necessary for the protection of the interest of the beneficiaries.

DAVID R. CASTLEMAN, CHARLES W. MILNER and DAVIS W. EDWARDS for appellants.

WM. FURLONG and A. P. HUMPHREY for appellee, Fidelity & Columbia Trust Company.

THOMAS A. BARKER and HELM BRUCE for appellee, John M. Settle.

MARSHALL & NETTLEROTH for appellee, Charles H. Bohmer.

THOMAS A. BARKER for appellee, Ohio River Sand Company.


OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

By his will, which was duly probated, Paul C. Barth, who died August 21, 1907, devised all of his estate except a few minor bequests in equal shares to his three infant sons, Frank L., Paul C. and Albert T. Barth, to be held in trust however until the youngest child became twenty-two years of age.

The appellee, Fidelity & Columbia Trust Company, was named as executor of the will and trustee for his infant children and qualified both as executor and trustee on August 26, 1907, and the following day John M.

Settle, D. F. Murphy and Thoms D. Craig were appointed appraisers of the estate. Craig, although he qualified, did not act, and Settle and Murphy on the 10th day of September appraised the real estate at $73,000.00 and the personal property at about $55,000.00 exclusive of fifteen shares of the capital stock of the Ohio River Sand Company, which they reported but did not appraise, stating in the appraisement that its value was unknown.

On September 17, 1907, less than a month after Barth's death, the executor sold the fifteen shares of Ohio River Sand Company stock, the par value of which was $1,500.00 for $27,500.00 to its co-appellees, John M. Settle and Charles H. Bohmer.

In this action, originally filed by the executor for a settlement of its accounts, the three sons of the testator, one of whom was still a minor when their cross-pleading was filed, seek a cancellation of the sale of this stock to Settle and Bohmer and an accounting by them of all profits realized since the acquisition of the stock, and failing in that, to secure damages of over a hundred dollars against the fiduciary.

From the judgment of the chancellor denying them relief against either Settle and Bohmer or the fiduciary they have prosecuted this appeal.

The cancellation of the sale to Settle and Bohmer is sought upon three grounds; first, that the fiduciary did not have the authority to sell; second, that John M. Settle, being an appraiser, could not buy; and, third, that the sale as to both Settle and Bohmer was fraudulent.

1.   The will did not authorize the executor to sell personal property, and by section 4707 of the Kentucky Statutes an executor is forbidden to sell dividend paying stock, such as this was, except upon certain prescribed conditions. This section is as follows:

"All persons or corporations holding stocks, bonds or other securities, in a fiduciary capacity for loan or investment, shall have power to sell and transfer the same whenever in the judgment of such fiduciary such sale will benefit the trust estate, and reinvest the proceeds as in section 4706 of this chapter authorized; but no administrator or executor shall sell any dividend pa ing stocks, bonds or other security which the decedent owned at his death, until so ordered by a court of general equity jursidiction in the county where letters of administration were granted or the will recorded; and the court, or in vacation, the judge thereof, may, upon the *ex parte* petition of said fiduciary, make said order when-

ever it is necessary to raise funds to pay the debts of the decedent, or when said court or judge may, in his discretion, deem necessary for the protection of the estate or the interest of the beneficiary. A purchaser in good faith for value from such fiduciary shall not be bound to look to the application of the proceeds of sale, nor shall a corporation in which stock held by a fiduciary is sold, as herein authorized, be liable for transferring such stock on its books upon the order of such fiduciary.''

Before making the sale to Settle and Bohmer the appellee trust company filed in the Jefferson circuit court the following *ex parte* petition.

''The petitioner, the Fidelity Trust Company, states that it is a corporation organized under the laws of the state of Kentucky, with power to sue and be sued, contract and be contracted with, and to act as executor and trustee of the estate of deceased persons.

''The petitioner states that on the 21st day of August, 1907, Paul C. Barth departed this life a resident of and domiciled in the city of Louisville, Jefferson county, Kentucky, leaving a last will and testament which was duly admitted to probate by the Jefferson county court. In and by said will this petitioner was appointed the executor and trustee of his said estate and on the 26th day of August, 1907, qualified as executor and trustee by executing bond with surety and taking the oath prescribed by the statute, assumed said trust and is now administering upon the assets of said estate.

''The petitioner states that among other property which came into its hands as such executor and trustee is fifteen shares of capital stock of the Ohio River Sand Company and sixty shares of the capital stock of the Island Land Company. The petitioner states that both of said concerns are commercial corporations subject to the influence of business changes and reverses and it is the opinion and belief of said trustee that, owing to the death of said Paul C. Barth and the loss of his influence in the management of both said companies, that it is advisable and desirable that said stocks be sold and the petitioner requests advice of this court in the matter.

''Wherefore, the petitioner prays that judgment be entered as herein prayed.''

The petition was verified by the vice president of appellee. Nothing else appears of record upon that application except the order which was entered by the court upon the same day the petition was filed, which is as follows:

"This petition coming on to be heard and the court being advised, it is considered and adjudged that it is advisable for the petitioner, as executor and trustee, to sell the fifteen shares of the capital stock of the Ohio River Sand Company and the sixty shares of the Island Land Company, belonging to the estate of Paul C. Barth, deceased, and now in possession of the petitioner, and the Fidelity Trust Company, executor and trustee of the estate of Paul C. Barth, deceased, is authorized, directed and empowered to sell and dispose of said stock at the best price obtainable therefor, provided the same is not less than said stock originally cost, said sale or sales to be made at such time and such place and on such terms as may in the judgment of the trustee and executor seem most advantageous and desirable for the estate of said Paul C. Barth."

Immediately thereafter the sale to Settle and Bohmer was consummated at the price of $27,500.00 theretofore agreed upon.

Appellants insist that this section of the statute is mandatory and confers a special power upon a court of general equity jurisdiction to order a sale of this character of decedent's property only when it is necessary to pay debts or to protect the estate or the interest of a beneficiary; that such a necessity is a fact that must be manifested by the record to sustain jurisdiction; that the petition does not aver or the judgment declare any such necessity, and that therefore the court was without jurisdiction of the matter and the order or judgment is absolutely void.

Appellees contend, first, that since under the common law in force in this state the executor already had title and absolute power to sell personal property just as did the decedent, the statute confers no new power but directs only how an existing power shall be exercised, and is therefore merely directory; and, second, that, if mandatory, the judgment, which has never been set aside or modified, was not void, but voidable only at most and cannot be attacked in this a collateral proceeding; that in either event the purchaser, unless guilty of fraud, will be protected.

Conceding the force of appellees' argument that the statute should be construed as directory only, if, as claimed, it does not materially change the character of the title of the personal representative to the personal estate of a decedent, or confer upon him any power he

would not otherwise have, and merely directs the manner in which that power can be exercised with respect to one of the numerous classes of personal property, we are nevertheless constrained to hold that the statute is mandatory because of the opinion that appellees' premises are untrue, or at least inaccurate, and that to hold it directory only would defeat the legislative purpose. The statute is mandatory in its terms, a pertinent though not a controlling factor, and was plainly intended to change and limit very materially the personal representative's common law power of sale over this particular class of personal property. Title is but the evidence of power over property. Any change of power necessarily changes the character of title. Formerly, under the common law in force in the state, a personal representative, by the mere fact of his appointment and qualification, was invested with such title to his decedent's personalty as carried with it an absolute, unlimited power to sell. However, by reason of this statute, his appointment and qualification, while still investing him with legal title, confer upon him only a qualified power of sale as to dividend paying stocks, and impose upon him the duty of delivering to the beneficial owner the property in kind, just as it came into his possession, unless empowered under this statute to sell same. Crenshaw v. Ware, 148 Ky. 196. It no longer lies in his discretion to decide whether or not such property should be sold. That discretion has been taken away from the executor and lodged elsewhere.

Clearly then the statute does not merely direct how the executor may exercise a recognized power, because it both limits the power and prescribes how, when and where it may be obtained. The fact, too, that the purchaser from such a fiduciary is by the statute absolved only from the duty of looking to the application of the proceeds of such sale by necessary implication charges him with the duty of seeing that the statute has been substantially complied with in obtaining power to make the sale.

We are, therefore, confident the statute must be held to be mandatory rather than directory and must be substantially complied with by the personal representative or he will fail in his effort to obtain the desired power to sell, without which, of course, he cannot confer title upon the purchaser, who must always know, at his peril, the character of title (or the extent of power to sell, which is the same thing) of the seller.

But even so, under the rule in this state and some others, the statute—manifestly intended to cure a defect in the common law for the better protection of property rights, and therefore remedial—must be construed liberally so as to effectuate the legislative purpose. Kentucky Statutes, section 460; Sutton v. Sutton, 87 Ky. 216; 25 R. C. L. 1057. That purpose, though not happily expressed, is quite evident we think. To begin with, the statute does not even pretend to alter the existing law with reference to devolution of title. Under this statute, as at the common law, the legal title to all of decedent's personalty vests in his personal representative, carrying with it the right of possession and control. Nor does the statute deny his power to sell, because it expressly authorizes him to sell when it is necessary to pay the debts of decedent or to protect the estate or the interest of the beneficiary, which doubtless was the extent of his authority when properly exercised at common law. But at common law the question of such necessity rested in his discretion alone, and a purchaser from him took good title even if he abused that discretion, whereas under the statute this discretion for the better protection of the estate and beneficiaries is lodged with a court of equity or the judge thereof in vacation, and the purchaser takes good title from the executor when authorized to make the sale by the court or judge even should that discretion be abused. It certainly was never the intention of the legislature to place in jeopardy the title of a purchaser of this character of property from an administrator or executor when, after application to the circuit court or judge thereof of the county of his appointment, he had been authorized to make the sale, if perchance the circuit court or judge abused his discretion in the matter. The question of necessity for a sale for the payment of debts or protection of the estate or beneficiary necessarily had to be lodged somewhere because the creditors have a first claim upon the personal property and it is the duty of the executor not only to protect the creditors but the estate and the beneficiary as well, and the discretion to determine this necessity was not lodged in the court but in the court or the judge thereof. The proceeding prescribed to procure permission to exercise his conditional power of sale is a purely *ex parte* application to the court or judge, whichever is available for immediate summary action, and resembles much more nearly an original application for letters of administration to a probate court than any

*inter partes* judicial proceeding cognizable in our practice. No one having an equitable interest in the property, either creditor or beneficiary, is a necessary or possible party. Only the fiduciary, the legal title holder, is represented, and only he and a purchaser from him can possibly be bound or affected by what the court or judge may do. The applicant for power to sell must still be responsible as a fiduciary for any sale he may make after thus "ordered" so to do, or else those to whom he is responsible are without recourse. He certainly cannot claim protection under the order or permission he procures against those for whom he holds title, and who have had no opportunity to be heard upon the application, if he ought not to have applied for or been granted permission to sell, or if he acts fraudulently or negligently thereafter.

Clearly such a sale by the fiduciary is not a judicial sale by the court in any sense. Hence section 696 of the Civil Code, which requires judicial sales to be public and upon such terms as the court may order within prescribed limits, is not applicable.

Nor is the proceeding or the statute under which it is had at all like the proceedings or the statutes under which a sale may be had of real estate of infants and other persons under a disability, to which appellants would have us liken it. In such proceedings the infants hold title to the land, the sale is by the court, and the infants must be brought into court in the manner prescribed before the court procures jurisdiction to act. The statute in such cases is in derogation of common law rights of property in that it deprives certain classes of persons of title to property vested in them in a manner not permissible at common law and not now applicable to other classes of title holders, whereas the statute here applies to all classes of persons alike and is not in derogation of common law property rights but is remedial and for the better protection of equitable interests in certain classes of property. The question of necessity for the sale is therefore not a jurisdictional fact that must affirmatively appear of record, but is the state of fact upon which the court or judge exercises his discretion conferred by statute and must be presumed unless the contrary affirmatively appears.

But even if the harsher rule ought to be applied, we think such a necessity for a sale to protect the estate and beneficiaries as the statute implies is sufficiently shown for jurisdictional purposes from the record involved

here. The statute says the sale may be made by the executor "when said court or judge may in his discretion deem (it) necessary for the protection of the estate or the interest of the beneficiary," upon a summary, *ex parte* petition, without prescribing how or by what means such necessity shall be made to appear. The petition was verified and in our opinion sufficiently states the jurisdictional facts, even if necessity be regarded as one of them, although the word necessity is not used in the petition and the language employed is not the most appropriate. It describes the property sold as stock in a sand company and a land company, and states that both concerns are "commercial corporations subject to the influence of business changes and reverses, and it is the opinion and belief of said trustee that owing to the death of Paul C. Barth and the loss of his influence in the management of both of said companies that it is advisable and desirable that said stocks be sold," &c.

Although not perfectly pleaded of course, the following facts, it seems to us, are presented to the court's discretion as reasons why the sale ought to be made.

The sand company and land company are commercial corporations, which by their very nature and of common knowledge are of a hazardous nature and of such character that a fiduciary may not invest therein funds intrusted to his care. Paul C. Barth was connected with the management of both companies and his death increased the hazard of stock ownership therein in the judgment of the fiduciary to such an extent a sale is advisable and desirable for the protection of the estate and the interest of the beneficiaries.

These are certainly considerations upon which a court or judge might reasonably base a conclusion that a sale ought to be made for the protection of the estate and beneficiaries, and this, in our judgment, is all that was ever intended or can be reasonably inferred from the statute. If not, then what one judge or court might consider sufficient to render a sale necessary for the protection of the estate and beneficiaries another court or judge might consider quite insufficient, and no one would ever know until this court had passed upon the sufficiency of the facts of a case whether a sale was legal or void. Such a construction would reduce the statute to an absurdity and thwart the very purpose of the legislature in prescribing an informal summary method of determining the question.

When considered as a whole and in the light of existing laws and practices, as must be done to ascertain what the legislature meant by what it said, the purpose and meaning of the statute seem to us quite plain and may be stated thus: (1) An executor or administrator cannot sell this class of property until, but can sell when, in the discretion of the designated court or judge it becomes necessary for any one of three assigned causes. And this to protect the estate and beneficiaries from costs or loss from an unnecessary sale. (2) The question of necessity is left to the local circuit court or judge thereof, whichever is available for immediate action, rather than the fiduciary, to be determined, however, upon an *ex parte,* summary application, without representation of the parties equitably interested, in order that that class of personalty may still be sold and the proceeds available for the payment of debts or reinvestment, without the delay and expense incident to a formal judicial inquiry, whenever in the discretion of the court or judge it ought to be done in an expeditious and prudent administration of the estate.

Such a construction does no violence to the language of the statute, makes it salutary and reasonable in its effect, and satisfies fully every conceivable purpose the legislature could have had in mind.

The first ground upon which appellants seek the cancellation of the sale is therefore untenable.

2. Another purely legal objection to the validity of the sale is that Settle, because an appraiser, could not be a purchaser in good faith. In support of this contention counsel for appellants cite cases from other jurisdictions which would not be without force perhaps if this court had not already definitely settled this question by the adoption and observance of a contrary rule for many years which we feel constrained to follow for the sake of *stare decisis,* if for no other reason. Jones v. Deposit and Peoples Bank, 180 Ky. 395; Baker v. Weeks, 178 Ky. 515; Ison v. Kinnaird, 13 R. 569, 17 S. W. 633; Barlow v. McClintock, 10 R. 894, 11 S. W. 29. An examination of these cases will disclose the fact that this court is committed to the rule that an appraiser may become a purchaser of property he has appraised unless it is shown that he made the appraisement with a view of becoming a purchaser and undervalued the property with that in mind.

The appraisement in this case shows that Settle refused to place any value at all upon this stock and stated that its value was unknown, as did the other appraiser.

Hence it cannot be said that he undervalued the stock for the purpose of obtaining an advantage thereby, nor does it satisfactorily appear, if at all, that at the time he acted as an appraiser but refused to appraise this stock he had any intention of becoming the purchaser thereof.

3. Nor is there proof of any fraud upon the part of Settle in making the purchase. His testimony that Barr, president of the trust company, and not he suggested that he become a purchaser and made the approaches which resulted in the sale is not contradicted by anyone, and it is also clearly established—in fact admitted by Barr—that he was in possession of every fact from which the true value of the stock might have been ascertained, and that every representation of any fact relevant upon such an inquiry made by Settle was literally and exactly true. His refusal to value this stock was sufficient to put the executor upon notice that he must ascertain for himself its value before making a sale thereof, and Barr admits that Settle's refusal to appraise the stock and what he told him about it did not mislead him in any way but actually put him upon guard that in dealing with Settle he must rely upon his own judgment and information as to the value of the stock.

The whole charge of fraud upon the part of Settle is based solely upon the fact that he was a director and managing officer of the Ohio River Sand Company and upon the assumption that because of that fact he knew the real value of the stock was greatly in excess of what he was paying for it, and that he was under the duty of dislosing to Barr, the fiduciary of the stockholders in the corporation, because of that relationship, his knowledge of the value of the stock.

Even if we assume that Settle knew the stock was worth more than he was agreeing to pay for same, which he denies, the mere fact that he was an officer of the corporation did not impose upon him any duty of imparting such knowledge to his stockholders, or a representative of his stockholders from whom he was purchasing stock in the corporation. The only legal duty of any kind that Settle owed to the trust company or its wards was the duty to deal fairly and without fraud. As an officer of the corporation he, of course, owed to the trust company acting for its wards, who were stockholders, the same duty, and no more, that he owed to every other stockholder in the corporation; that is, to make no misstatement of any material fact with reference to the corporation about which he was asked, or about which he volun-

teered to give information. This the record shows con-clusively he did not do, and there is no proof whatever of fraud upon his part in the purchase of this stock. This disposes of all of the grounds upon which a cancellation of the sale is sought so far as Settle is concerned, and therefore, too, so far as Bohmer is concerned, for it is only claimed that he and Settle were acting together and that he was chargeable with all the invalidating acts asserted against Settle, none being asserted against him.

4.   This brings us to a consideration of whether the fiduciary, by reason of fraud or negligence upon its part, is liable in damages for any loss that may have been sustained by appellants as a result of the sale of this stock for less than it was then worth. At the very outset the question of fraud may be eliminated because the only charge of fraud made by appellants is against the purchaser and not the seller, it being their claim that the latter was overreached and the sale vitiated by the fraud practiced by the former. But even though the sale was without fraud by or profit to the fiduciary, it is nevertheless liable for any loss appellants sustained if resultant from the negligence of the fiduciary. Counsel for the parties agree, as do the authorities, that the fiduciary was under the legal duty of exercising with respect to this stock, as well as with respect to all matters pertaining to the estate, that degree of care and diligence which ordinarily careful and prudent persons exercise in their own personal affairs; that is, ordinary care. Pomeroy 3rd Equity Jurisprudence, 1070. The failure to exercise this care is, of course, negligence for which the fiduciary will be liable to respond in damages. This is a fact that the appellants had to prove before they could recover of the fiduciary. Negligence is imputed to the fiduciary not only in the sale but in applying to the court for authority to make the sale.

As already set forth, the order of the court entered upon the *ex parte* application of the fiduciary was not a judicial sale by the court but was merely a grant of power for the exercise of which the executor must answer to its wards. Hence, even though the court or judge was authorized upon a showing made in the prescribed form in granting the power to sell and the sale was legal and valid. the executor is not protected thereby but must be held liable for any loss resultant therefrom if negligently made.

Upon this feature of the case we cannot agree with the chancellor's conclusion that there was no evidence of negligence by the executor or loss by the appellants. This stock had paid phenomenal dividends for the twelve or fourteen years of the corporation's existence, and for the two years immediately preceding Barth's death amounted to more than eight hundred per cent a year on the par value of the stock, and approximately fifty per cent a year on the value realized by the sale the executor made.

The stock, because of the hazardous nature of the business doubtless should have been sold for the protection of the estate and the beneficiaries, but only, of course, if its real value could be obtained; and its uniform earning capacity covering a period of twelve or fourteen years was at least an element to be considered in determining its value.

The order authorizing the executor to sell certainly imposed upon it the duty to sell at its value or not to sell at all. Neither the estate nor the beneficiaries could be protected by a sacrificial sale that fully discounted every possible depreciation in its value. It could not have realized much less for them upon a liquidation, since the assets were worth as much as was realized from the sale. The death of Mr. Barth, and of Captain Duffy a short time theretofore, two of the three owners of all of the stock in the company, and who had jointly managed its affairs without salary, as well as the fact that the company had to buy its sand from others and owned no patent or other exclusive right that gave it a monopoly or control of business, materially decreased, of course, the value of the past earning capacity as a criterion of the present worth, but certainly did not entirely remove that factor from consideration and justify a hasty sale by the executor upon the basis of the bare value of the company's assets to the first and only person approached about the matter. The sons of Captain Duffy, who had succeeded him in the business, and who owned fifty per cent of the company's stock, were not apprised of the executor's desire to sell, or even consulted to learn if they would help find a purchaser or assist in determining the stock's real value. The company had withstood the death of Captain Duffy some eight months previously without material, if any, impairment in its earning capacity. It had never failed to pay enormous dividends in any year since its organization, did not owe a dollar, had never borrowed a cent, and owned assets worth, accord-

ing to Settle and Bohmer's testimony, about $110,000.00, which made the stock, upon the basis of the assets alone, worth just about what was secured from the sale to Settle and Bohmer.

We are convinced that the executor did not exercise that care in making this sale that ordinarily prudent persons exercise in the management of their own affairs, and was therefore guilty of negligence and must answer in damages to appellants whatever loss they sustained thereby.

Neither the court nor its commissioner to whom the case was referred to hear evidence took this view of the case, and consequently did not attempt to fix the damages. This is a court of error and not of original jurisdiction, and as has been our practice in numerous such cases—Holloway v. Brown, 181 Ky. 716; United Iron Works Company v. Watterson Hotel Company, 182 Ky. 113—the cause will be remanded for a trial by the lower court of this issue, upon which the evidence already taken upon the issue, as well as any other evidence that either of the parties may offer, will be considered.

Wherefore the judgment is affirmed as to Settle and Bohmer and reversed as to the Fidelity & Columbia Trust Company, executor.

Whole court except Judge Quin sitting. Judge Sampson dissenting.