## Kitchen's Ex'rs and Trustees v. King et al.

(Decided June 22, 1934.)

236

DYSARD, TINSLEY & PRICHARD and GEO. B. MARTIN for appellants.

W. E. DARRAGH and J. J. McBRAYER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

This is an appeal prosecuted by James H. Kitchen, John W. Kitchen, and Charles J. Kitchen, the executors of Charles Kitchen, deceased, and, as they style them-. selves, the trustees of his estate, from a judgment construing the will of Charles Kitchen, contrary to the construction put upon it by these executors. This litigation was begun December 24, 1930, by three of the daughters and devisees of Charles Kitchen, namely, Effie W. King, Lottie McBrayer, and Lulu B. King, by filing a suit in equity against the above-named executors of their father's will, and against their three sisters and co-devisees, Myrtle Saulsbury, Ida Clevinger, and Mollie Lee Wright, for a settlement and partition of the estate of Charles Kitchen, which necessarily involved a construction of the will of their father, and, the trial court having by its judgment adopted a view of its meaning contrary to the view the executors had of it, this appeal by the executors resulted. Mesdames Saulsbury, Clevinger, and Wright are not parties to this appeal.

Charles Kitchen died a resident of Carter county, Ky., on September 1, 1923, leaving the following paper which has been probated as his will:

"I, Charles Kitchen, resident of Leon, Carter County, Kentucky, do make and publish this my last will and testament hereby revoking all others by me made. First: I direct that all my just debts and funeral expenses be paid by my Executors, as well as all other debts for which I am legally bound or shall be required to pay by due process in law,

and to determine whether latter shall be paid without suit my Executors shall use their discretion and their decision shall be binding on my estate.

"Second: I direct that my executors shall collect all moneys that may be due and owing to me at my death which I have not otherwise transferred, sold, or assigned and they may in their discretion convert into money any or all stocks, bonds, chooses in action, or other things that I may own or be in possession of at my death or which I may have an interest in, and same shall be binding upon my estate.

"Third: I hereby direct that any property or money that I have not otherwise disposed of shall constitute and become and remain a trust to be managed and controlled by my executors to such time as is directed herein for disposition of same. They are authorized and have full power to control same.

"Fourth: I request that as soon as practicable after my death my executors shall, at the time and in the manner they deem most fitted, convert my estate into money or other property as they may think best for the benefit of my heirs and they are hereby authorized to sell and convey any real estate that I may own at my death and apportion same among my heirs as may seem to the best interest of my estate. I direct that at their discretion they shall pay to each of the following of my children in pro rata, James H. Kitchen, Ida Clevenger, Mollie Lee Wright, John W. Kitchen, Myrtle Saulsberry, Effie W. King, Lula B. King, Lottie F. Kitchen and Charles Kitchen, equal shares of my estate so as not to injure the valuation of [sic] in making collections of same and in making distribution of same they shall take into consideration advancements that I have heretofore made to any one of said children.

"Fifth: I have heretofore deeded to my two sons, Cecil Harold Kitchen and Andrew J. Kitchen, real estate and have also set apart for them sufficient personal property to make up their full share of my estate.

"I have deeded this property to a trustee for

their benefit and also have placed the collaterals and sureties in the hands of said trustee.

"This is their full share of my estate and it is all I intend them to have out of my estate as it is their full part, and they shall not in the distributions of my estate herein provided by this will have any interest in any way or receive any portion thereof.

"Sixth: I hereby nominate and appoint without any revocation my three sons, James H. Kitchen, John W. Kitchen, and Charles J. Kitchen, the executors of my estate with full power to act and I direct that they shall not make any inventory of my estate and none shall be required of them.

"My whole estate is left in their hands to manage as seems best to them to carry out the provisions as herein stated and no bond shall be required of them.

"My estate is left in their hands to manage and distribute as may seem best to them in accordance with the provision herein stated.

"Given under my hand this 9th day of June, 1920.

"Charles Kitchen."

The named executors qualified and took possession of the estate, and, having construed this will to mean that it put this estate in their hands to be held by them until they saw fit to distribute it, they styled themselves trustees, filed no inventory, and proceeded to hold it, and are still endeavoring to do so, despite the fact that the court's judgment directed them to make a full and complete settlement and accounting. The parts of this will that are involved are the second, third, fourth, and sixth clauses thereof. The only question is, Did the testator intend for these executors to hold this so long as they pleased, as is to some extent indicated by the third and sixth clauses, or did the testator only intend by those clauses to leave them free and unhampered in its management until such time as they conveniently could carry out the testator's main intention, which was that as soon as practicable they should divide it among his children, giving to each one-ninth thereof, which is so fully indicated by the fourth clause.

These executors had held this property nine years

when the judgment was entered, and have superseded the judgment and are seeking still to hold it. The meaning of this will is to be determined by the whole of it. One part of it is as much the will of Charles Kitchen as another, and the testator's real purpose is to be gathered from a consideration of it as a whole. If he intended to create a trust to continue during the pleasure of the executors, why did he say anything in the sixth clause about a distribution? If he had not contemplated a distribution, why did he speak of it there? If he did not contemplate a distribution, why did he in the second clause direct these executors to collect all moneys due him? Why not leave them at interest? Why did he direct them to convert into money his stocks, bonds, choses in action, or other things? Why not let those investments be? If he contemplated a trust to endure during the pleasure of these executors, why did he in the third clause limit their management and control to such time as is directed herein for disposition of same? Even these clauses without the fourth show the testator was not contemplating the creation of a long enduring trust, and, when the fourth clause is read, all doubt or question disappears, for it shows clearly the testator desired his estate distributed, and wanted that done as soon as practicable after his death. Many authorities are cited dealing with questions concerning the management of trust estates, but, in view of the conclusion to which we have come, they fade out of the picture. It is a rare thing in the construction of a will that much aid may be derived from the construction of another. There are no documents that come before the courts for construction which present the wide variety that wills do. One may safely say there are no two wills exactly alike. Each separate will is a separate problem. We feel the trial court reached a correct conclusion when he directed these executors to make a full and complete settlement.

The judgment is affirmed. The whole court sitting.