## Schott et al. v. Schott's Executor.

Dec. 20, 1940.

As Extended on Denial of Rehearing March 28, 1941.

W. G. Dearing, Charles E. Keller and J. C. Cloyd for appellants.
A. M. Marret for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Dr. Christopher Schott, a resident of Louisville, died April 16, 1928. He left a will by which he devised certain property to his mother; to Mrs. Hughes, the income from a $5,000 trust, providing for distribution of such in case of prior deaths. The residue was devised to brothers and sisters, four of whom are appellants here, one brother having died prior to appeal. Testator spe-

cifically provided that the executor sell "all the rest and residue of my property of all kinds * * * within two years after my death," with power to convey "for the purposes of carrying out the intentions and directions of my will."

The Louisville Trust Company qualified as executor April 24, 1928, and took charge of the estate which consisted of some personalty, the major portion being improved lots in Louisville, and property in Texas. On November 7, 1930, the executor filed its petition in which it sought a settlement of its accounts, and orders for the sale of some real estate. It was shown that it had sold some personal property and most of the real estate, but such had not realized enough to pay debts. It also sought allowance for administrative costs and attorneys fees, with request for reference to commissioner.

On February 13, 1931, the commissioner reported, showing collections and disbursements in the payment of preferred claims, taxes and costs of administration, leaving a balance of about $2,000 with which to pay general creditors on claims of around $3,700, or to apply to the Hughes trust, or for residuary legatees. This report, while incomplete, shows allowances to the executor of $808. Counsel fees of $2,500; court costs and a fee to the commissioner. The commissioner recommended that the remaining real estate be sold. On November 16, 1931, the chancellor confirmed the commissioner's report.

The matter thus stood until October 2, 1937, when appellants tendered answer and counterclaim. One of the appellants, Henrietta Schott, on January 3, 1939, filed an amended answer and counterclaim, in which she asserted that she was not before the court when the orders of reference, the report and its confirmation were had, made and done. In other respects her answer is common to the joint answer. The record shows elsewhere that in February, 1931, she with other defendants by counsel, entered appearance to the Trust Company's suit. There were two or more amended answers and counterclaims filed, one as late as July 11, 1940. Summarizing the issues sought to be raised by these pleadings, we find the following advanced:

First that the appointed executor was at the time of the pleadings still acting as such. They charge that the commissioner's report was merely a partial settlement.

Perhaps the chief contention is that the will directed the executor to sell all property coming to its hands within two years, for the purpose of carrying out testator's intentions, and that such direction was mandatory, and since the executor failed to sell some of the property until after the two years following qualification, the property was equitably converted into personalty, Ruh's Ex'rs v. Ruh, 270 Ky. 792, 110 S. W. (2d) 1097, hence the fiduciary becomes liable for any loss resulting from neglect or failure to sell as per terms of the will, as in other cases where loss to the estate is due to negligence. Fleming v. Jones, 12 Bush 503, 75 Ky. 503. Specifically it is charged that this failure resulted in a considerable loss to the estate, because within the two years the properties could have been sold in the open market at profit.

It was contended that the executor had no right to collect rents from the unsold property, nor to spend large sums in costs of repairs and upkeep; that it also advanced money to pay interest charges, overdrafts, taxes, etc., in connection with the unsold property to the approximate amount of $6,000, with which it should be chargeable in its settlement, and that many accounts paid by the executor were unreasonable and some unnecessary. Likewise, that funeral expenses allowed to the amount of $1882, were inordinate, as were the allowances to executor and counsel for executor, some of which items appear in the commissioner's partial settlement. The answers set out in detail a list of claims said to have been improperly paid, the list covering more than eight pages (not shown in report filed), ranging from small amounts to more than $600. We have not gone much into detail as to items and amounts, but have endeavored to exemplify the foundation of appellant's claims.

In their prayer appellants asked that the ''estate be referred to the commissioner for a full and complete settlement''; that he be directed to determine the fair market value of the real estate as of the two years following the qualification of the representative, and to deduct therefrom only duly proven and necessary expenses in preserving the property. Further to scale down the burial expenses, commissions to executor, fees to counsel and to charge the remainder to executor.

This was the substance of the prayer in all pleadings.

The commissioner reported favorably on claims of thirty or more general creditors, reaching a total of $3,700, which were not paid. One was a claim of Dickinson, appellant in the companion case. The commissioner allowed a number of claims which were classed as preferred debts, and reported that there had come to the representative $27,037.27, out of which it had disbursed "in payment of costs of administration, taxes, interest on mortgage liens, funeral expenses, lien and preferred claims, a total of $26,076.28." The commissioner said: "Vouchers have been filed, with me for said expenditures, which are allowed as just and proper expenditures." There is no particular mention made as to these expenses, except in the pleadings.

The first answer and counterclaim of appellants was tendered on October 2, 1937. There is no order filing of record. This fact is urged as bearing on the plea of limitations, advanced by appellees; this contention need not be discussed since it is apparent that counsel for appellee treated it as filed by later demurring generally. Appellee in reply did not undertake to deny appellants' pleading, but plead the settlement and its confirmation, relying on estoppel and limitation, saying that appellants made no complaint of its administration of affairs of the estate until October 2, 1937; or claimed that it was the duty of the representative to have sold the real estate within the two years. The reply also set out the conditions under which it found certain real estate coming to its hands, in respect of encumbrances, and gave reasons why the property had not been sold; this plea raised an issue.

In a second joint amended pleading appellants plead that there had been no final order of distribution "or disposition of the case," and that the only order was the one confirming the report. This pleading amplified the former pleas. At this point (Nov. 17, 1939) appellee demurred generally to the "answer and counterclaim and amended answers and counterclaims," and the cause was submitted on all pending motions, and in a memorandum (not entered as a judgment) the chancellor wrote:

"Aside from the question of limitations, which defense should be pleaded and passed on by the court before reference to the commissioner, I am of the opinion that the two year provision in the will

is mandatory. * * * However, before the case is referred back to the commissioner, the allegations of the various amended answers should be sufficiently specific as to the two tracts not sold within the two years' period."

The chancellor treated the demurrer as a motion to make answers more specific, and closed by saying he would not pass on the motion for re-reference until amended answer was filed, or the executor be permitted to file defense, including plea of limitations. As we observe the pleadings thus far, the appellee had already plead both laches and limitations.

Following this memorandum, appellants filed a third amended pleading in which they amplified the facts with reference to the unsold parcels of real estate, alleging that failure to sell prior to April 18, 1930, occasioned a total loss of approximately $20,000.

To this third amended pleading, after demurring, appellees replied, specifically denying, and pleading that as to the waste, negligence and loss resulting from a failure to sell within the debated period, same (if any) existed more than five years prior to the filing of answer and counterclaim. It is noted that the sales of the various properties were made on or after February, 1935, not more than five years prior to filing of appellants' pleadings.

The court overruled appellants' demurrer to the second paragraph of the reply to their third amended pleading. This paragraph was the plea of limitations, relating to the failure to sell within the two years, and loss resulting therefrom. In an amended reply plaintiff plead limitations as to certain items appearing in the commissioner's report, which had been allowed and disbursed.

There was interposed a special demurrer to the pleadings of appellants, on the grounds of lack of legal capacity to maintain action, and on May 21, 1940, the chancellor sustained it, with exceptions. Notwithstanding, the appellants came back with a joint amended answer and counterclaim, amplifying such as related to failures to sell real estate, and undertook in a way to excuse the apparent delay in commencing counter-action. This met with general and special demurrers, and on July 12, 1940, the cause was submitted on special and

general demurrer to the joint amended pleadings; both were sustained. Upon declination to plead further all answers and counterclaims were dismissed, with appeal granted.

So, one question presented for our consideration is, was the court in error in sustaining the special demurrer; sustained, admittedly, on the ground that suit seeking the character of relief here sought, could only be maintained by an administrator de bonis non, the chancellor (and appellee) relying on the case of Fidelity & Deposit Co. of Maryland v. Barrett, 271 Ky. 163, 111 S. W. (2d) 631, in which the construction of Section 3846-1, Kentucky Statutes, was considered. This section is quoted in full in the later case of Gibbs v. Peoples National Bank, infra.

In the Barrett case it appeared that the appellant was surety on the bond of the administrator. The surety was defendant in the settlement suit, but was not mentioned in the judgment against Sowards for a named sum. He did not respond to a rule, and the master commissioner, with two of the heirs, filed suit against the surety. The surety filed a special demurrer, as in the instant case, raising the question of capacity to maintain the action. The court overruled the demurrer, and adjudged against the surety. We found it to be obvious that the commissioner could not maintain the suit, and that it could be maintained only by the administrator de bonis non. We said:

"No reason is apparent why this cause of action, assuming that one exists, should not have been prosecuted in the name of an administrator de bonis non, as provided in Section 3846-1 of the Kentucky Statutes * * *. It is true that, prior to the enactment of Section 3846-1 in 1934, a right of action such as that here sought to be asserted rested alone in the distributees, heirs, or creditors of the deceased. Proctor v. Pigman's Adm'r, 246 Ky. 745, 56 S. W. (2d) 342. Proctor v. Pigman's Adm'r was decided in 1933, and Section 3846-1 was no doubt enacted to cure the very situation presented in that case."

When we turn to the Pigman case, we find the "situation" sought to be cured by the statute to be that an original administrator had made final settlement which

had been confirmed. We found that the action was an effort to surcharge a settlement, and that then the right to maintain was, under the common law, not in an administrator de bonis non, but in the heirs, distributees or creditors. The enactment of Section 3846-1 cured the "situation," to the extent that it gave an administrator de bonis non, not only the right to sue for "such estate * * * as remained in specie," but also to maintain action against a former administrator to recover all damages arising from the maladministration or omission of his predecessor, in addition to any funds wrongfully paid out or not accounted for. Gibbs v. Peoples Nat. Bank, 278 Ky. 415, 128 S. W. (2d) 958, 960.

In the case just mentioned, after analyzing the act, with reference to title and contents (Constitution, Section 51) we held the act not to authorize an administrator de bonis non to "maintain an action against anyone other than his predecessor and surety and his predecessor's representatives." We discussed in a limited way, but did not decide whether the act, supra, "was intended to supersede entirely the old common-law rule and to provide a simple and orderly method of collecting wasted assets of an estate," citing Yancy's Adm'r v. Yancy, 183 Ky. 512, 209 S. W. 858, 3 A. L. R. 1249. Nor are we called upon to decide that question here, since it is admitted that the original administrator is still active. The opinion in the Barrett case seems to show, at least, that all trust duties had been performed, and final settlement had before the attempt to collect from Soward's surety.

The question of the court's ruling on the general demurrer, arises, as we take it, primarily on the ruling by the chancellor on demurrer of answering defendants to the third paragraph of the Trust Company's reply to the third amended pleading of defendants, which again brought forward the plea of limitations. It is noted that the chancellor first sustained special demurrer to a subsequent pleading, and later special and general demurrers to all pleadings by the legatees, apparently carrying the demurrers back to appellees' first pleas.

It is unnecessary to prolong this opinion by a re-recital of the facts plead, and admitted by the general demurrers, but from a consideration thereof we may state our conclusions to be: First, that the report of the commissioner, as a whole, did not in any sense manifest

a final settlement; however, since the report was confirmed by the court, and this without exceptions, the parties are estopped, and barred by the statute of limitations from raising objection at the time the attempt was made, or to any claim allowed, and followed by disbursement from the funds of the estate five years prior to the filing of pleadings by appellants. Funeral expenses, the payment of upkeep and repairs on the property, counsel fees, commissions and costs paid, are exemplary.

While settlement here made did not in any sense discharge the administrator, and the trust is in effect until final settlement, yet to the "extent of that part of the estate which was before the court," when the report of the commissioner was confirmed, the executor was discharged, unless timely exception had been taken thereto, or proper equitable proceedings begun within the statutory periods. Robinson's Committee v. Elam's Ex'x, 90 Ky. 300, 302, 14 S. W. 84, 12 Ky. Law Rep. 271; Abney v. Pearson, 255 Ky. 394, 74 S. W. (2d) 465. See also Farmers' Bank of West Louisville v. American Surety Co. of New York, 205 Ky. 177, 265 S. W. 505.

Appellants argue that the settlement in the instant case was merely an interlocutory order that may be disregarded, and cite Adkisson v. Dent, 88 Ky. 628, 11 S. W. 950, 11 Ky. Law Rep. 85, and the more recent case of Buckley v. Buckley, 251 Ky. 271, 274, 64 S. W. (2d) 593. In the Adkisson case it appeared that the commissioner was appointed to, and made an audit of accounts. His report was confirmed, but there had been no disbursement of funds. We referred to this case in the Buckley case, and said the order confirming the commissioner's report, but not disposing of funds, was interlocutory. The same was true in Paul v. Wetlauf, 71 S. W. 632, 24 Ky. Law. Rep. 1480.

There can be little doubt that had the appellants filed exceptions to the partial report as approved or confirmed as to payments made, appeal could have been prosecuted to test the ruling. Burris v. Thompson, 249 Ky. 90, 60 S. W. (2d) 340; Town of Highland Park v. Wilson, 186 Ky. 233, 216 S. W. 370. These are not in conflict with Chappell v. Neurath, 277 Ky. 87, 125 S. W. (2d) 1024, which may be cited as authority that insofar as the report dealt with matters other than such as above suggested, there was no final order.

There can be no doubt of the right of appellants to maintain an action to obtain accounting, final settlement and distribution of the estate, nor as to their right to raise the question as to whether or not, under the will and the failure to comply with its terms as to sale of the real estate within the two-year period, and have the court determine the effect of the failure. Melheiser v. Central Trust Co., 237 Ky. 757, 36 S. W. (2d) 377; Barth v. Fidelity & Columbia Trust Co., 188 Ky. 788, 799, 224 S. W. 351.

As we view the case, eliminating as we have so much as relates to matters closed by the confirmation of the report, the suit cannot be construed as seeking recovery on fiducial bond, hence the statutes in such cases, and cited in briefs, are not involved; nor is there ground to call for application of the law of limitations relating to fraud. It is a suit for settlement, and since an action would lie to test final settlement within statutory periods, we see no reason to apply the bar in this action to account and distribute. Appellants have a right to compel a settlement and distribution. Hargis v. Sewell's Adm'r, 87 Ky. 63, 7 S. W. 557, 9 Ky. Law Rep. 920; Kitchen's Ex'rs v. King, 255 Ky. 235, 73 S. W. (2d) 45; Anspacher v. Utterback's Adm'r, 252 Ky. 666, 68 S. W. (2d) 15, which hold that the limitation does not begin to run until settlement is made.

Our conclusion is that the chancellor should not have sustained the general demurrer to so much of the pleadings as sought settlement, or a determination of the question of equitable conversion; nor as to payments for repairs or upkeep, collection and disbursements of rents and profits, not embraced in the partial settlement, or as may not be shown to be barred by limitation.

The appeal in the Dickinson case was ordered heard with the Schott case. We have referred to it, supra, as being the case which involved the general claims of thirty or more general creditors whose claims were found to be valid, but not paid in whole or part. These parties were not required to except, but should be allowed to take any legal steps to procure payment of their claims within statutory periods. In this case there were no pleadings on the part of appellee, save the special and general demurrers, which the chancellor sustained. There was no plea of limitation. What we have

said in respect to the rulings on the demurrers in the Schott case apply here. Our conclusion is that the chancellor should on remand, which is directed, set aside the order sustaining the special demurrer in each case. Since the pleadings state a cause of action, the general demurrers should also be overruled to the extent indicated in the foregoing.

Judgment reversed.